STATE ex rel. PECK vs. RIORDAN and others.

*Constitutional law — County board of supervisors.*

Chapter 332, Private and Local Laws of 1868, providing for a county board of *eight* supervisors in a certain county, which, under the general statute relative to county government, would have only *three*, is in conflict with section 23, article 4 of the state constitution, which declares that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

This was an action, under the statute, to try the title of the defendants (seven in number) to the office of member of the board of supervisors of Washington county.* The relator is one of the three persons who constituted said board just prior to the Tuesday succeeding the second Monday of November, 1868; they having been elected in pursuance of general laws of the state then and since in force. The defendants were elected on the day last mentioned, in pursuance of an act of the legislature approved March 6, 1868, and published as chapter 332, Private and Local Laws of 1868.

* Leave was granted by Mr. Justice COLE, on inspection of the complaint, to join all the defendants in this one action.

The complaint sets forth the facts relative to the election and qualification of said three persons, and of the defendants, and the fact that the latter claimed and exercised the office in question; and it alleged that their election was invalid, on the ground that said chapter 332 was unconstitutional. The defendants demurred to the complaint, as not stating a cause of action.

*Thorp & Frisby* and *S. U. Pinney*, for the demurrer, argued, 1. That the words "*system* of county government," in section 23, article 4 of the state constitution, refer to the mode in which the powers conferred upon counties are distributed among the various offices established by law for county government, and have no relation to the number of persons composing the board of supervisors; citing *Hull v. Marshall Co.*, 12 Iowa, 154. 2. That it is for the legislature alone to determine what degree of uniformity in this respect is practicable. *Carpenter v. Montgomery*, 7 Blackf. 415; *Rumsey v. The People*, 19 N. Y. 49; *Mosier v. Hilton*, 15 Barb. 657; *Field v. The People*, 2 Scam. 82, 84; *People v. Draper*, 15 N. Y. 545; *U. S. v. Fisher*, 2 Cranch, 203, 207. This provision in the constitution is directory merely. *People v. Chenango*, 8 N. Y. 328; *Willets v. Ridgeway*, 9 Ind. 367; *Green v. Aker*, 11 id. 223; *People v. Lake Co.*, 33 Cal. 491. 3. The rule is well settled, as stated by the supreme court of Michigan in *Tyler v. The People* (8 Mich. 333), "that to warrant us in declaring a statute unconstitutional, we should be able to lay our finger on the part of the constitution violated, and that the infraction should be clear and free from a reasonable doubt." *Clark v. City of Rochester*, 5 Abb. 107, 113; *State ex rel. Chandler v. Main*, 16 Wis. 415; 6 id. 14; 17 id. 682. And it is certainly not clear that, by a uniformity in the *system* of county government, the constitution means to require the boards of supervisors in the several counties to consist of the same number of members. 4. Counsel contended that the system of county govern-

ment established by the general law is neither uniform in fact, nor as uniform as practicable, if uniformity in the system is interpreted as having reference to the *number* of supervisors.

*Frisby & Weil* and *P. L. Spooner*, for the relator, to the point that section 23, article 4 of the state constitution is mandatory, and not merely directory, cited Cooley's Const. Lim. 74–83, 150; *Wolcott v. Wigton,* 7 Ind. 44, 48, 49; *Greencastle v. Black,* 5 id. 566, 571, 574; *People v. Lawrence,* 36 Barb. 185–188; *Spangler v. Jacoby,* 14 Ill. 297; *Supervisors v. People,* 25 id. 183; *Ex parte Pritz,* 9 Iowa, 36; *Thomas v. Board of Commissioners,* 5 Ind. 4; 6 Ohio St. 269; *People v. Lake County,* 33 Cal. 494. 2. They also argued that if special laws as to the *number* of supervisors in particular. counties, similar to chapter 332, Private and Local Laws of 1868, are compatible with the *unity of the system* of county government required by said section 23, they are not compatible with the *uniformity* required by the second clause; that there is an important distinction between a want of uniformity created by circumstances and a want of uniformity created by the law itself (5 Ind. 574); and while the courts would sustain the act of the legislature where it might be doubtful whether there was a departure from the greatest *practicable* uniformity, yet in a clear case of such departure, like the present, they were bound to hold the act unconstitutional.

Cole, J. The question arising upon this demurrer is as to the validity of chapter 332, Private and Local Laws of 1868. That act provides, that in one of the assembly districts of Washington county there should be elected, at the general election in November, 1868, four county supervisors, two for the term of two years, and two for the term of one year; and that in the other assembly district there should, at the same election, be

elected three supervisors, one for the term of one year, and two for the term of two years; and *that thereafter two supervisors should be elected annually in each of the assembly districts, for the term of two years.* The obvious purpose of the act is, therefore, to give Washington county, which has only two assembly districts, a county board of supervisors consisting of eight members. By the general statute theretofore and now existing, it is provided, that the county board of each of the organized counties of the state shall consist of three electors, one to be elected in and for each of the supervisor districts by the qualified voters of such district; but in counties which contain three or more assembly districts, a supervisor is chosen for each district; and in counties where there are more than three and there is an even number of assembly districts, it was provided that an additional supervisor, for the county at large, should be elected by the qualified voters of the county. (Chap. 75, General Laws of 1865.) ' So it will be readily seen that this act of 1868, by providing for a board of supervisors for Washington county, consisting .of eight members, departs from the general statute applicable to the other counties of the state, and which would give that county a board of only three members. And the question is, Does this act, which creates a diversity, when compared with the general law, as to the number of supervisors which shall be elected in Washington county, come in conflict with any provision of the constitution? It is insisted that it does, and that it violates section 23, Art. IV of the constitution, which reads as follows: "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

Now it is argued, in opposition to the validity of the act of 1868, that the first clause of the above provision of the constitution requires oneness or unity in the system of county government established by the legis-

lature, while the second clause of the section requires that the system established shall be, if not absolutely uniform, at least as nearly so as practicable, and that if the legislature see fit to establish what is known as the supervisor system of county government, then the constitution forbids that the legislature provide that one county, consisting of two assembly districts, may have a board of three members ; another of the same number of assembly districts, a board of five members ; and another a board of eight; since this destroys the uniformity of the system, and renders it less uniform than is practicable.

On the other hand, it is claimed that the word "system," as used in this provision of the constitution, is synonymous with the word "plan," and that the whole object of the entire section is fulfilled when the legislature has devised one system or plan of county government, by which certain general powers of local government and police regulation are delegated to the counties organized, which powers are to be executed by a class of agents or county officers appointed or elected for that purpose ; that the legislature is entirely free to act in the matter of determining by law how many persons may exercise the powers and perform the duties devolved by general laws upon the county boards of supervisors, and may increase or diminish the number of members in any particular county at its discretion.

It seems to us, however, that this latter construction does violence to both the letter and spirit of the provision. For the provision not only requires that the system established shall be one system—that is, that all the counties organized shall be invested with the same general powers of local government delegated to them, and have the supervisor system of county government, if that is the one adopted—but likewise, that this system shall be as nearly uniform as circumstances will permit. Now, certainly, the uniformity in the system is broken, when

one county, comprising two assembly districts, has a board of supervisors consisting of eight members, and another county, of the same population, has a board of three. And where there are two or more counties in the state of the same population, if the legislature may create diversity in respect to the number of members which shall constitute the different boards of supervisors, may it not also further provide that the governmental powers with which the boards are invested shall be different? The uniformity of the system would seem to be as much broken by diversity in the number which should constitute the board in counties of the same population, as by diversity in the distribution of the powers which the board should execute. For, in counties composing two assembly districts, one county might have a board consisting of three members, another one of five, another one of eight, and another of ten, and so on; so that no two counties in the state, although having the same population, would have boards of the same number of members. It is true that, in that case, the system might be preserved: it would still be the supervisor system of county government; but no one could say that the system was as uniform as it was practicable to make it. The constitution, then, has regard as well to uniformity in the system as to unity in the system; and wherever uniformity is practicable, it must be preserved. Of course, absolute uniformity may be impracticable in all cases; the situation of the different counties, and the convenience of the inhabitants, may require some departure from the principle of rigid uniformity. This departure from absolute uniformity may be found in the general statute, which provides that the county boards, in each of the organized counties, shall consist of three members, whether the county has two assembly districts or less than that number. The important duties which the board of supervisors has to perform may require that there should be at least three members in every organized

county, without regard to its population. So, when there is an even member of assembly districts in a county, it may greatly facilitate the transaction of business which comes before the board to have an additional member chosen from the county at large. The general statute so provides; and the departure from uniformity seems to be necessary. These are proper matters of legislative discretion. But there is a very wide distinction between that want of uniformity arising under the provisions of the general statute, and that want of uniformity created by the law in question. Here the board of supervisors of Washington county is made to consist of eight members; while, in other counties comprising two assembly districts, the boards, by the general law, consist of three members. Such diversity, where uniformity is attainable, would seem to be a plain violation of the clause of the constitution above cited.

It was said, upon the argument, that the object of this provision was to prevent the legislature from establishing different systems of town and county government, such as existed in the territory. This was undoubtedly one of the principal objects which the framers of the constitution had in view when they adopted the clause in question. But, evidently, this was not the sole object of the provision; for, if it had been, the second clause of the section would have been unnecessary. The provision was not only intended to prevent the evils which arose from a diversity in the different systems of town and county government, by requiring that the legislature should establish but one system applicable to the whole state, but it was further designed to prohibit special legislation. If legislative uniformity in the system, as far as practicable, was enjoined, then the evils which grow out of the present act, and of other similar acts, would be avoided. But if the legislature were free to determine by how many persons the duties devolved by general laws on the county board of supervisors should

be performed in any particular county, and might increase or diminish the number at discretion, then it is easy to see that it would be constantly called upon to pass these local and special acts varying the number. All the evils and mischief of special legislation, which it was the manifest object of this and other provisions of the constitution to prevent, would result from such a construction.

But again, it is said that the language used in the second clause of the section, "shall be as nearly uniform as practicable," shows that it is a directory and not a mandatory provision, one addressed only to the judgment of the legislature, whose decision as to what is and what is not "practicable," cannot be subject to review. The legislature has passed this act, it is said, increasing the number of supervisors of Washington county to eight, and thus has decided that the system is "as nearly uniform as practicable" for that locality.

We do not think, however, that this whole matter rests in the discretion of the legislature. Where the legislature has established a system of county and town government substantially uniform throughout the state, it may be conceded that its action is final upon the matter. The courts, in such a case, would not attempt to review the action of the legislative body, and decide whether it might not have perfected a system more nearly uniform. But, when a law like the one before us breaks the uniformity of a system already in operation, it seems to us that it is a proper exercise of judicial power to declare that the act is void, because it departs from the rule of uniformity which the constitution enjoins. In this case the uniformity of the system has been clearly violated. By the existing general statute, the board of supervisors for Washington county consisted of three electors chosen from the supervisor districts of that county. By the act of 1868, the board is made to consist of eight members. Is it not idle to say

that the act is as nearly uniform with the general system as practicable? It seems to us to be clearly a matter of judicial cognizance to determine whether the constitution has been violated in this particular.

It follows from these views that the demurrer to the complaint must be overruled.

*By the Court.* — Demurrer overruled.