## THE STATE AND DE GUENTHER VS. DOUGLAS.

CONSTITUIONAL LAW: *Power of legislature to abolish offices and shorten terms.*

1. An office created by act of the legislature may be abolished in like manner, or the term of the officer otherwise shortened by general legislation, after his election, in the absence of any special provision of the constitution forbidding it.
2. Chapters 84 and 85, Laws of 1870, which changed the system of county government from and after the second Tuesday of April, 1870, are valid; and all persons elected under pre-existing laws members of the county board of supervisors, ceased on that day to be such supervisors, their office being abolished.

This was an action, under the statute, in the nature of a *quo warranto* (commenced in this court), to determine the rights of the parties, respectively, to the office of supervisor of Milwaukee county. The allegations of the complaint will sufficiently appear from the opinion. The defendant demurred to the complaint as not stating a cause of action.

*C. K. Martin,* for the demurrer, to the point that the power of the state legislature is not restricted except by the state and federal constitutions, cited *People v. Morrell,* 21 Wend. 563; *Butler v. Palmer,* 1 Hill, 324; *Bloodgood v. R. R. Co.,* 18 Wend. 9; *Leggett v. Hunter,* 19 N. Y. 445. To the point that public offices are agencies created for the benefit of the public, and not for that of the incumbent, and the officer has no vested right in the office, he cited *Conner v. The Mayor, etc.,* 5 N. Y. 285; 2 Sandf. 355. And he contended that under our state constitution the office of county supervisor is left entirely at the control of the legislature.

*Jenkins & Elliott, contra.* [No brief on file.]

COLE, J. The question arising upon this demurrer is as to the validity of the acts of the legislature at

its last session, re-organizing the board of supervisors for each county, and changing the system of county government, as least so far as related to the basis of representation upon the county boards. Previous to this recent legislation, the county board for each organized county consisted of three members elected in and for each supervisor district; but in counties which contained more than three assembly districts, there was elected a supervisor for each assembly district; and in counties where there were more than three and an even number of assembly districts, an additional supervisor at large was chosen by the qualified voters of the entire county. These members of the county board were elected at the general election in November, for two years; supervisors representing even numbered districts, together with the supervisor at large, being elected at one election, and those from the odd numbered districts at the next election, and so on alternately. Ch. 129, Laws of 1861; ch. 399, Laws of 1862; and ch. 75, Laws of 1865. By chapter 84, Laws of 1870, these various statutes are repealed, and the provisions of the revised statutes are re-enacted, which make the county boards consist of the chairmen of the boards of supervisors of the several towns, together with supervisors chosen from cities and incorporated villages; each ward or part of a ward in a city, and every incorporated village, or part of an incorporated village, being represented by a supervisor on the board of the county where it is situated. Ch. 85, Laws of 1870. These members of the county boards are elected annually by their respective constituencies. Chapters 84 and 85, Laws of 1870, declared that the existing supervisors should remain in office until the first Tuesday of April, 1870, when, as we understand these statutes, their offices were abolished.

Now it appears from the allegations of the complaint, that the plaintiff was elected at the general election

in November, 1868, to the office of supervisor in the first assembly district of the county of Milwaukee, comprising the first ward of the city of Milwaukee, for the term of two years from the first Monday of January, 1869, and that he duly qualified and entered upon the duties of his office. It further appears, that the defendant was, on the first Tuesday of April, 1870, at an election held in the first ward of the city of Milwaukee, by the greatest number of votes given at such election for supervisor, duly elected as supervisor of the county of Milwaukee, and thereupon took and filed his oath of office as required by law, and did every other act requisite and necessary by him to be done to authorize him to enter upon the discharge of the duties of his office on the 20th day of April last, when, it is alleged, he ousted the plaintiff.

Upon these allegations it is very obvious, that if chapters 84 and 85, Laws of 1870, are constitutional and valid, and discontinue altogether the office held by the plaintiff, he has no standing in court. And that it was competent for the legislature to enact them, and that it was the manifest intent of these statutes· to abolish the office held by the plaintiff, we think is quite plain. The only debatable question then is : Could the legislature, under the circumstances, abolish the office held by the plaintiff? That office was one created by the legislature, and we are not aware of any constitutional provision which prohibited the legislature from abolishing it, when they deemed it expedient to do so. It is readily conceded that in a case of a constitutional office, the tenure of which is prescribed by that instrument, the legislature cannot abridge the term thereof, nor transfer its duties to some other officer. But in respect to an office created entirely by an act of the legislature, the case is different. There the legislature may restrict the term, or abolish the office altogether, as they may think the public interests require (*State v. Von Baumbach*, 12 Wis. 310), there

being no constitutional restriction upon its power in the special case. Any other rule of law would almost paralyze the legislature. A reference to the statutes upon the subject will show that the legislature has been constantly changing the organization of the county boards of supervisors. At one time the board has been composed of the chairmen of the boards of supervisors of the several towns. Then it was provided that it should consist of supervisors chosen from the assembly districts. Now, the legislature has returned substantially to the constitution of the board as established by the revision of 1858. At the next session this method of representation may be changed, and some other adopted. But "it is of the nature of legislation to create and abolish offices accordingly as they may be deemed useful or superfluous." COWEN, J., in *The People v. Morrell*, 21 Wend. 563–576. So far as the office of supervisor is concerned, the matter seems to be left by the constitution entirely to the discretion of the legislature. It may enlarge or restrict the term of the office, or abolish it, and change the basis of representation and the constitution of the county boards, as in the present instance. The only limitation upon the power of the legislature which the constitution imposes is, that "it shall establish but one system of town and county government, which shall be as nearly uniform as practicable." It cannot be denied that the legislature intended to discontinue the office held by the plaintiff, after the first Tuesday of April last. No sufficient reason presents itself why this intention should not have effect in this case. The plaintiff's office was one created solely by the statute, and from the nature of the case entirely subject to the law-making power.

It was not claimed that the plaintiff had any vested right in his office, which the legislature could not abrogate or destroy. Such a position would be clearly untenable upon the authorities, and as a principle

utterly inadmissible under our form of government. On this point the remarks of RUGGLES, C. J., in *Connor v. Mayor, etc., of New York,* 5 N. Y. 285–295, are just and appropriate. " Public offices in this state," says the chief justice, " are not incorporeal hereditaments, nor have they the character or qualities of grants. They are agencies. With few exceptions they are voluntarily taken, and may at any time be resigned. They are created for the benefit of the public, and not granted for the benefit of the incumbent. Their terms are fixed with a view to public utility and convenience, and not for the purpose of granting the emoluments during that period to the office-holder."

We think the demurrer to the complaint must be sustained.

*By the Court.*—Demurrer sustained.