6]            AUGUST TERM, 1927.            397

State ex rel. Bare v. Schinz, 194 Wis. 397.

STATE EX REL. BARE and another, Relators, vs. SCHINZ, Circuit Judge, Respondent.

*November 12—December 6, 1927.*

*Counties: Not municipal corporations: Eminent domain: Condemnation of property by county or town: Necessity of the taking: By whom determined: Constitutions: How construed.*

1. A county is a political subdivision and a governmental agency of the state, performing primarily the functions of the state locally, as distinguished from a village or a city, which is created for the local convenience of its inhabitants.  p. 400.
2. Sub. (2), sec. 32.07, Stats., providing that on application of a town or a county for the condemnation of property the petitioner shall determine the necessity thereof, is not in violation of sec. 2, art. XI, Const., denying to a municipal corporation the right to take private property for public use without the verdict of a jury as to the necessity of the taking, as the term "municipal corporation," as used in the constitutional provision, was not intended to include counties and other *quasi*-municipal corporations.  p. 401.
3. Where the meaning of a constitutional provision has been once firmly established as of the time of its adoption, such meaning continues forever unless it is changed or modified by the constitution; and a constitutional provision is construed by a court according to the intention of its framers and the people approving it as determined in the light of the circumstances in which they were placed at the time, the rule of construction being analogous to that applied to wills and contracts.  pp. 403, 404.
4. Sec. 2, art. XI, does not apply to counties, and was not amended to extend the meaning of the term "municipal corporations" to counties by virtue of the amendment of 1874 to sec. 3, art. XI, which includes counties within the term "municipal corporations" with respect to limitation of indebtedness.  p. 403.
5. The amendment to sub. 9, sec. 31, art. IV, Const., adopted in 1892, prohibiting the legislature from incorporating any city or amending the charter thereof, did not have the effect of abolishing the fundamental distinctions between municipal corporations proper and *quasi*-municipal corporations.  p. 407.

APPLICATION by relators for absolute writ of prohibition prohibiting the respondent, *Hon. Walter Schinz,* judge of

the circuit court for Milwaukee county, from proceeding with ·the appointment of commissioners in certain condemnation proceedings begun to acquire property of the relators by the Milwaukee County Park Commission.

It is the contention of the relators that counties in the state are municipal corporations within the purview of sec. 2, art. XI, of the state constitution, which provides: "No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

The position taken by the respondent is that municipal corporations so designated in said sec. 2 embrace only cities and villages, and that therefore the constitutional provision does not apply to towns or counties; that as to towns and counties the legislature can provide for the method of acquiring private property for public· purposes, and that it legislated upon the subject when it enacted sec. 32.07 (2) of the Statutes, which in part reads as follows: "If the application be by a town or county, or by a board, commission or public officer, . . . the petitioner shall determine the necessity."

An alternative writ of prohibition issued out of this court upon the petition of the relators, and the respondent in due time moved to quash such writ. The motion to quash therefore raised, as is conceded by relators in their brief, the sole question whether necessity must be determined by the verdict of a jury, or whether such necessity can be determined under the statutory provision above quoted.

For the relators there was a brief by *Churchill, Bennett & Churchill,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by *Eugene Wengert,* district attorney of Milwaukee county, and *Daniel W. Sullivan,* corporation counsel, and oral argument by *Mr. Sullivan.*

DOERFLER, J.   The technical distinctions between a municipal corporation and a county, sometimes designated as a *quasi*-municipal corporation, have not at all times been observed by text-writers and by courts; and this failure to so distinguish is also made manifest in the constitution of our state.   It is unfortunate that this is so, because much uncertainty, litigation, and expense could have been avoided if the fundamental distinctions between these classes of public bodies had at all times been clearly kept in mind and given full recognition.   The distinctions between a municipal corporation proper and a so-called *quasi*-municipal corporation existed at the time of the adoption of our constitution, and the framers of that document were aware of the same, as is evidenced by the language used in its provisions; but notwithstanding the painstaking care of the framers in the drafting of the fundamental law, the language employed in certain instances was not as clear and explicit as it might have been, and as a result construction by the courts became necessary.

Sec. 2 of art. XI of the constitution at an early date in the judicial history of the state became the subject of construction in the case of *Norton v. Peck,* 3 Wis. 714.   The principal issue in that case consisted of whether a town was a municipal corporation, and in the decision the learned Justice writing the opinion freely expressed the view that the issue was a troublesome one.   Upon an analysis of the fundamental differences between municipal corporations proper and so-called *quasi*-municipal corporations, the distinctions became clear, and it was decided that a town was not a municipal corporation proper, but came under the category of the so-called *quasi*-municipal corporations.   This view once definitely expressed determined the status of these public bodies from that time forward, as manifested by the numerous cases in our Reports subsequent to *Norton v.*

*Peck, supra,* in which the distinctions were uniformly adhered to. These distinctions are based upon fundamental differences in these public bodies, relating both to the purposes for which they were created and the method of their creation.

Sec. 112 of vol. 1 of McQuillin on Municipal Corporations quotes with approval the language of an Ohio case as follows:

"Municipal corporations proper are called into existence either at the direct solicitation or by the free consent of the people who compose them. Counties are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, at least assented to, by the people it embraces; the latter is superimposed by a sovereign and paramount authority. A municipal corporation proper is created mainly for the *interest, advantage, and convenience* of the locality and its people. A county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the states and are, in fact, but a branch of the general administration of that policy." (Italics ours.)

Those fundamental distinctions between municipal corporations proper on the one hand, and counties, towns, and school districts on the other, exist at the present time in the same sense and to the same degree as they existed at the time of the adoption of the constitution. A county is a political subdivision of the state, as was held in *Young v. Juneau County,* 192 Wis. 646, 212 N. W. 295. It is a governmental agency of the state, performing primarily the functions of the state locally. It so acts for the state in the administration

of justice; in the establishment of almshouses and other charitable institutions; in maintaining insane asylums and penal institutions. It is not created for the local convenience of the inhabitants as in the case of cities and villages. It exists not by virtue of its own will or consent, but as a result of the superimposed will of the state. A village or a city, however, was created in the early day by special act of the legislature upon the application of the inhabitants or with their consent, and they are still created and exist under and pursuant to the general statutes of the state, and they come into being upon the application of the inhabitants or with their consent.

It is conceded by the learned counsel for the relators that the framers of the constitution used the term "municipal corporation" as it appears in sec. 2 of art. XI in its technical sense. However, it is strenuously argued that since the adoption of the constitution changes were wrought in that document which are strongly persuasive that the meaning of that term has undergone a fundamental change; that the legislature also in its enactments has recognized such a change in meaning; and that this court, in conformity with the alleged trend manifested in the constitution and in the statutes, has finally, in the case of *Sutter v. Milwaukee Board of Fire Underwriters,* 161 Wis. 615, 155 N. W. 127, framed and adopted a definition of a municipal corporation which embraces not only cities and villages but also counties, towns, and school districts. The argument of the learned counsel for the relators is somewhat persuasive and contains considerable good logic, but is nevertheless delusive. Reference is made to the original provision in the constitution as contained in sec. 3 of art. XI, which reads as follows:

"It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments

and taxation, and in contracting debts by such municipal corporations."

It is then argued that counties and towns under the statutes were given certain corporate powers not possessed by them at the time of the adoption of the constitution, and that by virtue of abuses in taxation which manifested themselves not only in the conduct of affairs of cities and villages, but also with respect to counties and other so-called *quasi*-municipal corporations, it became necessary to include all of these bodies in an amendment to said sec. 3, pursuant to which their powers to incur debts and of taxation were limited; that therefore, in 1874, sec. 3 aforesaid of the constitution was amended to read as follows:

"No county, city, town, village, school district, or other municipal corporation shall be allowed to become indebted in any manner or for any purpose to any amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness. Any county, city, town, village, school district, or other municipal corporation incurring any indebtedness as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same."

It is argued in substance that this constitutional amendment practically removed the keystone of the arch which maintained and supported the fundamental distinctions, as designed by the framers of the constitution, between counties and towns on the one hand and cities and villages on the other; that by its removal the entire structure which supported such distinctions crumbled, and that thenceforth no adequate reason continued to exist for the fundamental differences which had previously prevailed. Note that the amendment referred to was adopted in 1874, more than

fifty years prior to the time of the contention of counsel in this case. At that time many of the great constitutional lawyers who participated in the framing of the constitution, and who urged their views upon this court with reference to the construction of its provisions, were still alive and active, and yet the idea did not dawn in their minds, nor was it manifested, that so vital and revolutionary a change had taken place. Neither Chief Justices RYAN nor DIXON, who were then in the height of their intellectual powers, ever dreamed of such a change. Neither did the great lawyers such as Vilas, Pinney, Sloan, Bouck, Felker, Carpenter, and many others, entertain such a view, nor did such a change transpire.

Sec. 2 of art. XI stands today as it did at the time of its adoption, and has not been amended either expressly or by implication, and the contention that the fundamental differences between cities and villages and the so-called *quasi*-municipal corporations have been wiped out and eliminated is based upon mere sophistry. Counties and towns still remain political subdivisions of the state, created primarily for the administration of state functions; and cities and villages still continue to minister to local functions. The fundamental distinctions outlined in *Norton v. Peck, supra,* and as defined by all the great writers on municipal corporations, such as McQuillin, Cooley, and Dillon, still exist, and have continued to exist in all their original force, and these distinctions have been religiously adhered to by this court up to the time of the rendition of the opinion in *Kuder v. State,* 172 Wis. 141, 178 N. W. 249.

There is no intention expressed in the constitutional amendment of 1874 which indicates a change in the meaning of a municipal corporation as used in sec. 2, art. XI, of the constitution. The meaning of the constitutional provision having been once firmly established as of the time of its adoption, such meaning continues forever, unless it is changed or modified by the constitution. As is well said in

404 SUPREME COURT OF WISCONSIN. [Dec.

State ex rel. Bare v. Schinz, 194 Wis. 397.

the case of *State ex rel. Owen v. Donald,* 160 Wis. 21, 151 N. W. 331: "The constitution means what its framers and the people approving of it have intended it to mean, and that intent is to be determined in the light of the circumstances in which they were placed at the time, particularly as to objects which they had in view."

It follows, therefore, that when the framers of the constitution, in sec. 2 of art. XI, provided for the verdict of a jury in condemnation proceedings by a municipal corporation, they referred to cities and villages, and that the provision did not embrace counties and towns, and that a change in this meaning can only be wrought by a change in the constitution. We must further assume that when the framers restricted municipal corporations as they did in this section, they did it with a special object in view; that in the light of circumstances and conditions then existing there was a necessity for such restriction; and that no such necessity apparently existed as to counties and towns. A constitutional provision is construed by a court like the provisions of a contract or a will. The real object and purpose of construction is to ascertain the intention of the parties, and in order to arrive at such intention it oftentimes becomes necessary for a court to place itself as near as possible in the identical position in which the parties were at the time the contract was executed or the will was drawn.

Sec. 2 of art. XI of the constitution "means what the framers intended to have it mean, not what, as an original proposition, we would like to have it mean. That may be different because of the environment of its creators than the same system might mean under a wholly different environment. 'A thing which is within the intention of the makers' of a law 'is as much within' the law 'as if it were within the letter.'" *U. S. v. Freeman,* 3 How. 556, 565; *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041.

"Principles are expansible, but not subject to be added to or taken from by judicial administration or declaration to

cope with particular exigencies. The work of so coping in the field of fundamental law is reserved to the people themselves, as said in *Rippe v. Becker,* 56 Minn. 100, 57 N. W. 331." *State ex rel. Owen v. Donald, supra.*

It is true that in the amendment of 1874 above referred to, counties and towns were grouped together with cities and villages; that in naming the various public bodies embraced in the amendment they were all inferentially referred to as municipal corporations. In a sense they may all be denominated municipal corporations, although some of them had prior to that time been known as municipal corporations proper, and others as *quasi*-municipal corporations. The effect of the amendment was to classify all the bodies referred to as municipal corporations merely for taxation purposes, viz. to create a restriction which would be applicable to all alike. This result was achieved by the amendment, but nothing further.

Great reliance is placed by counsel for the relators upon the case of *Sutter v. Milwaukee Board of Fire Underwriters,* 161 Wis. 615, 155 N. W. 127. In that case this court said in the opinion, rendered by Mr. Justice TIMLIN:

"A municipal corporation in Wisconsin today is of the kind mentioned in art. XI of our constitution. The words now mean a body corporate consisting of the inhabitants of a designated area, created by the legislature, with or without the consent of such inhabitants, *for governmental purposes,* possessing local legislative and administrative power, also power to exercise within such area so much of the administrative power of the state as may be delegated to it, and possessing limited capacity to own and hold property and to act in purveyance of public conveniences." (Italics ours.)

The definition of a municipal corporation attempted in the *Sutter Case,* when applied to the issue in that case, undoubtedly was correct. The defense interposed consisted of the claim that the defendant was a municipal corporation and was therefore immune from liability for ordinary negligence on the part of its agents, servants, or employees. The

real issue tried was not whether the Milwaukee Board of Fire Underwriters was a municipal corporation, either in the strict or the broad sense, but whether under its charter it was exercising governmental functions.   Governmental functions are exercised by cities and villages as well as by counties and towns.   Both classes act at times in a governmental capacity and at times in a proprietary capacity.  The rule of immunity applies to all where they act in a governmental capacity, and it applies to none where they act in a proprietary capacity.   In other words, where a city or county acts in a proprietary capacity it is just as much liable for the negligent acts of agents, servants, and employees as are private corporations.   The court held that while the board in part was created to and that it did perform public functions, the principal object of its creation was designed to promote a personal benefit and profit; that in order to be immune it must be primarily public and not primarily private. For that reason the judgment of the lower court was affirmed.   Considering the issue involved in that case, together with its logic and the final conclusion arrived at, we are of the opinion that the definition promulgated had as its object merely a grouping of public corporations *performing governmental functions,* and the language employed so indicates.   As so construed it harmonizes with all of the other cases, both prior and later, of this court.   Construed, however, as counsel for the relators would have us construe it, it is in conflict with every other case in our Reports upon the subject.

The case of *Lund v. Chippewa County,* 93 Wis. 640, 67 N. W. 297, involved a construction of ch. 138, Laws of 1895, entitled: "An act to establish a home for the custody, training and education of the feeble-minded, . . . and to appropriate certain sums of money therein named."  The act, among other things, provided that "Municipalities of this state are hereby empowered to make the donations herein

mentioned for the establishment and building of such a home." One of the important questions raised in that case was whether counties were authorized to make donations for the establishment and maintenance of such a home. The act also provided that the site selected shall comprise not less than 200 acres of land, possessing good facilities for drainage and sewerage, and an abundant supply of pure water. The court in the opinion says:

"It would hardly be expected to find such a site in a city or incorporated village. Besides, the act makes all the provisions of ch. 32, R. S., relating to the support of insane persons and the liability of counties therefor, applicable, as far as practicable, to persons admitted to the home for the feeble-minded. Sec. 4. Since the chapter of the Revised Statutes so made applicable has little or no reference to cities or villages, but deals throughout with counties, we must conclude that by the word 'municipalities,' as used in the act in question, the legislature intended to include counties."

Counties therefore were included in the term "municipalities" by force of the statute, because counties were the principal recipients of the benefits of such a home. In other words, taking the act as a whole, the general language thereof, the purposes which the act was intended to serve, and the benefits to be derived therefrom, no other construction than the one given by the court was possible. This case merely manifested what has already been alluded to, that counties may be included with municipalities proper in a certain act, and may be classified as such in order that certain objects may be attained. But this is far from saying or holding that the distinctions between counties and towns on the one hand, and cities and villages on the other, have been obliterated in all cases. That such result has been achieved is expressly denied in the opinion, where the fundamental distinctions are again strongly reiterated and adhered to.

Neither did the constitutional amendment adopted in 1892, viz. sub. 9 of sec. 31, art. IV, whereby the legislature

was prohibited from incorporating any city or amending the charter thereof, have the effect of wiping out the fundamental distinctions above referred to between municipal corporations proper and *quasi*-municipal corporations, as was held in *State ex rel. Shawano v. Engel,* 171 Wis. 299, 177 N. W. 33.

We are therefore constrained to hold: That sec. 2 of art. XI of the constitution now has the same meaning and effect that it had when the constitution was adopted; that by the use of the term "municipal corporations" in that section the framers intended it to apply to municipal corporations proper, viz. cities and villages, and not to so-called *quasi*-municipal corporations; that such section has never been amended; that under the provisions of sec. 32.07 (2) of the Statutes, the petitioners in the original petition for condemnation of lands for park purposes are authorized to determine the necessity of the taking; and that no verdict of a jury is required.

The motion to quash the alternative writ is therefore granted.

*By the Court.*—It is so ordered.