STATE EX REL. SONNEBORN and others, Relators, v. SYLVESTER, County Clerk, and others, Respondents.*

*November 27, 1964—January 5, 1965.*

\* Case previously reported in 25 Wis. (2d) 177.

44

For the petitioners there were briefs by *Foley, Sammond & Lardner, Marvin E. Klitsner, James P. Brody,* and *Timothy C. Frautschi,* all of Milwaukee, and oral argument by *Mr. Brody* and *Mr. Klitsner.*

For the respondents there were briefs by *Harold J. Wollenzien,* corporation counsel of Waukesha county, *Quarles, Herriott & Clemons,* attorneys, and *L. C. Hammond, Jr.,* and *Ross Shumaker* of counsel, all of Milwaukee, and oral argument by *Mr..Wollenzien* and *Mr. Hammond.*

A brief was also filed by *Phillip B. Morrissy* of Elkhorn, special counsel for the Wisconsin County Boards Association.

Briefs *amici curiae* were filed by *Aberg, Bell, Blake & Metzner* and *Robert K. Aberg,* all of Madison, for Hermann Eisner; by *Karl P. Baldwin* of Appleton, for the Appleton

Area Chamber of Commerce; by *Edwin C. Conrad,* city attorney, and *David Pappas,* assistant city attorney, for the city of Madison; by *Shirley S. Abrahamson* of Madison, for the League of Women Voters of Wisconsin; by *H. William Ihrig* of Milwaukee, in *pro. per.;* by *Foley, Capwell, Foley & Kolbe* and *Garth R. Seehawer,* all of Racine, for J. D. McMurray.

HALLOWS, J. The complaint alleges the operation of sec. 59.03 (2), Stats., specifying the composition of county boards of supervisors in all Wisconsin counties excepting Milwaukee and Menominee counties has resulted in large disparities in county-board representation. An exhibit attached to and made a part of the complaint sets forth on the basis of the 1960 census and county-board-composition figures these disparities in all counties in terms of population, number of supervisors, and percentages of the norm for each county. An overall average of the 70 counties shows the ratio of representation between the most underrepresented and the most overrepresented unit which elects a supervisor is over three to one, and in 67 of the counties the ratio is over four to one. In 42 of those counties the disparity ratio is over 10 to one and in Wood, Racine, Iowa, Waukesha, and Dane counties, this ratio is respectively 39, 46, 59, 66, and 69 to one.

As a result, a small minority of citizens in many counties can control a majority of the votes cast by their supervisors. For example, in Waukesha county 26.1 percent of the population elect a majority of the county board and the districts vary in population from 276 in the village of Lac La Belle to 18,276 in the village of Menomonee Falls; in Racine county 24.7 percent of the population elect a majority of the county board and the districts range from 264 in the village of North Bay to 12,358 in the town of Mount Pleasant. In Vilas county 33.1 percent of the people elect a majority of the county board, in Marinette 23.2 percent, in Marathon 23.8

percent, in Florence county 19 percent, and in Eau Claire 21.1 percent. In Dane county 17.2 percent of the people elect a majority of the county board of supervisors and the village of Blue Mounds (population 227), the village of Brooklyn (population 216), and the village of Rockdale (population 191) each get one supervisor; the same number as the town of Blooming Grove (population 9,709) and the village of Monona (with a population of 8,178). There can be no dispute that sec. 59.03 (2), Stats., does in fact result in an unequal representation of the population and these facts are admitted by the demurrer.

Furthermore, sec. 59.03 (2), Stats.,[1] on its face does not purport to provide for the election of county-board mem-

[1] "59.03 BOARDS; COMPOSITION; ELECTION; TERMS; SUBSTITUTES; COMPENSATION; COMPATIBILITY. The boards of the several counties shall be classified and shall be composed of representatives from within the county elected and compensated as follows: . . .

(2) *Other Counties.* In counties containing less than 500,000 population and more than one town:

(a) *Composition.* The chairmen of the town boards.

(b) *Same.* A supervisor from each city ward or part of city ward in the county, but each city with a population of not over 800 shall have only one supervisor unless the city is in more than one county, in which case it shall be entitled to one supervisor in each county.

(c) *Same.* A supervisor from every village or part of a village in the county.

(d) *Election; terms.* A supervisor from a city or village shall be elected at the time that other city or village officers are elected.

(e) *Substitutes.* If any town chairman is unable to attend any meeting of the county board, either of the other members of the town board, to be designated by themselves (and if they disagree they shall decide by lot), shall attend the meeting as a member of the county board, but he shall not so act until the town clerk certifies to the county clerk that he was so designated. In cities and villages a substitute for any supervisor may be appointed in such case by the mayor or village president, and the city or village clerk shall certify the designation to the county clerk; or the mayor or village president may attend the meeting and act as a member of the county board with certification."

bers on an equal-population basis. The composition of the county board consists of the chairman of each town board, a supervisor from each city ward or part thereof in the county and a supervisor from each village or part thereof in the county. The supervisors from the cities and villages are elected as such but the town chairmen are not directly elected supervisors but hold such offices by virtue of being town chairmen, an elective office. The representation on the county board so far as the people in towns and villages are concerned is based upon such political units without regard to the number of people therein. Since the statute on its face does not purport to apportion the representative districts on the basis of population and the exhibits attached to the complaint admittedly demonstrate the disparity in the weight of votes in different districts caused by the present method of selecting county boards of supervisors, a single question is presented: Does sec. 59.03 (2), specifying the composition of the county boards of supervisors in all counties containing less than a half million population and more than one town violate: (1) The equal-protection clause of the Fourteenth amendment of the United States constitution, and (2) sec. 1, art. I of the Wisconsin constitution?

Preliminarily, we point out that sec. 1, art. I of the Wisconsin constitution [2] is framed in language of a Declaration of Rights and reminiscent of the Declaration of Independence, and many times has been held to be substantially equivalent of the due-process and the equal-protection clauses of the Fourteenth amendment to the United States constitution. In *Black v. State* (1902), 113 Wis. 205, 89 N. W. 522, the court said that the section must mean "equality

[2] "EQUALITY; INHERENT RIGHTS. *Section* 1. All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

before the law, if it means anything," and, "The idea is expressed more happily in the Fourteenth amendment." Again, in *Pauly v. Keebler* (1921), 175 Wis. 428, 185 N. W. 554, it was said in referring to the Fourteenth amendment that the first article of the Declaration of Rights in our constitution was a substantially equivalent limitation of legislative power and "our legislature is bound to accord all persons within its jurisdiction the equal protection of the laws." More recently we reaffirmed the concept that sec.. 1, art. I, is to be equated with the Fourteenth amendment in *Boden v. Milwaukee* (1959), 8 Wis. (2d) 318, 99 N. W. (2d) 156; *Lathrop v. Donohue* (1960), 10 Wis. (2d) 230, 102 N. W. (2d) 404; and *Haase v. Sawicki* (1963), 20 Wis. (2d) 308, 121 N. W. (2d) 876. Since there is no substantial difference between the two constitutions, we will henceforth refer only to the Fourteenth amendment of the United States constitution.

The petitioners contend the recent decisions of the United States supreme court require equal representation on the one man-one vote principle and although these decisions involved the election of members of congress, state legislature, or state offices, they are equally applicable to county-board elections. It is also argued the decisions of other states support the proposition that local govermental bodies must be apportioned according to population. On behalf of the respondents, it is contended that the electorate of a county does not have a constitutional right to the application of one person-one vote principle to the membership of county boards of supervisors since the composition and power of such boards are statutory rather than constitutional in origin. It is further contended that until the United States supreme court expressly determines that the equal-protection clause of the Fourteenth amendment applies to county-board membership, the Tenth amendment reserving power to the states not delegated to the United States is

applicable; and that since the state legislature has the plenary power over counties, the supreme court decisions on the composition of territorial legislatures and the District of Columbia board of commissioners are applicable to the county boards by analogy. .This last argument is phrased by other respondents as follows: The constitutional one man-one vote principle is applicable only to independent governmental entities deriving their power directly from the people governed, and counties are not such entities.

Humans are prone to accept that which exists and to which they have become accustomed as being endowed with special virtues. The *status quo* is always more attractive to the "haves" than to the "have nots," and what may be a virtue to one is a vice to another. A short reference to the development of Wisconsin counties may be enlightening.[3] The territory which is now Wisconsin was first laid out in counties and townships when Wisconsin was separated from Illinois and attached to the Michigan territory in 1818. Town-county form of government modeled after the New York plan was established in 1827 although there was little need for town government. In early times under this system the board of supervisors consisted of the chairmen of the town boards. Because of objection to this form of government, the type of small county boards used in the southern part of the United States was provided in 1839 shortly after the territory of Wisconsin was established. Under this system three commissioners elected at large composed the board. Thereafter, towns and counties were created without any real regard to uniformity.

By the time our constitution was established in 1848 the state was divided into 29 counties, all of which had established a large board town-county government excepting Grant, Green, Iowa, Lafayette, and Sauk counties, which had adopted the small board or commission form. Thus, "At

---

[3] 1952 Wisconsin Blue Book, p. 120.

and prior to the time of the adoption of the constitution there existed considerable diversity in town and county government in the territory of Wisconsin." *State ex rel. Busacker v. Groth* (1907), 132 Wis. 283, 285, 112 N. W. 431. This diversity resulted in the enactment in the constitution by sec. 23, art. IV, that, "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable; . . ." Thus the type and method of composition of county boards was not resolved by the constitution which also provided in sec. 22, "The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe."

In 1849 the new state legislature provided a town-county system which provided that towns were to be supervisorial districts but also provided for supervisors from cities. In 1861 the bill was proposed providing the supervisors in every county be limited to three in number elected by districts and in counties having only two assembly districts one supervisor elected at large. The bill also provided that in counties having more than three assembly districts the board was to have an extra supervisor for each such district. The bill became law but immediately came under attack. In 1868 a special law was enacted permitting Washington county to raise its board membership to eight, but was declared contrary to the uniformity clause of art. IV in *State ex rel. Peck v. Riordan* (1869), 24 Wis. 484. By ch. 84, Laws of 1870, the county-township plan was re-established by the legislature and continued efforts to break the hold of this form of county government were made. See *State and De Guenther v. Douglas* (1870), 26 Wis. 428. In 1907 counties with population of 250,000 were authorized to establish county boards composed of one supervisor from each assembly district. Today, sec. 59.03 (1), Stats., not involved in

this suit, provides for Milwaukee county a county board of supervisors composed of a supervisor from each assembly district therein elected by the electors of said district.

In 1921 the legislature by ch. 245, Laws of 1921, proposed counties might adopt a commission form of county government of three to nine commissioners by referendum vote. The act was amended in 1933 and the commission plan was considered by several counties and adopted by five of them. However, this law was declared unconstitutional as violating the uniformity law in *State ex rel. Adams v. Radcliffe* (1934), 216 Wis. 356, 257 N. W. 171. From that time up to the present time there have been many attempts to amend the constitution relating to the form of county government. Last year by ch. 500, Laws of 1963, the legislature created a joint interim study committee for the purpose of determining the best method of apportioning representation on a county board, which committee is required to recommend its plan to the 1965 legislature. From the history of county government in Wisconsin, it cannot be said the present form of county government has enjoyed universal acceptance. It is to be noted, however, that whether the boards were large or small, their membership was either elected directly or partly directly and partly indirectly.

The sharp conflict between the relators and respondents is the application of the one man-one vote principle to county boards. The principle of equal representation, or as it is commonly called "one man-one vote," as a requirement of the Fourteenth amendment is of recent pronouncement and has received considerable analysis and explanation by the United States supreme court. Soon after the landmark case of *Baker v. Carr* (1962), 369 U. S. 186, 82 Sup. Ct. 691, 7 L. Ed. (2d) 663, holding that legislative reapportionment was a justiciable issue, the roots of the equal-representation principle emerged in *Gray v. Sanders* (1963), 372 U. S. 368, 83 Sup. Ct. 801, 9 L. Ed. (2d) 821, under the equal-

protection clause of the Fourteenth amendment, and were nurtured in *Wesberry v. Sanders* (1964), 376 U. S. 1, 84 Sup. Ct. 526, 11 L. Ed. (2d) 481. In *Gray* the Georgia county-unit system was held unconstitutional to a statewide primary election because that system resulted in a dilution of the weight of the votes of certain Georgian voters merely because of where they resided. It was stated in the opinion, "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of 'we the people' under the constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications."

In *Wesberry v. Sanders, supra,* the court determined that the constitutional test for the validity of congressional districting schemes was one of substantial equality of population among the various districts established by a state legislature for the election of members of the house of representatives. This holding was predicated on the construction of the constitution that the election of members of the house of representatives "by the people" means "that as nearly as practical one man's vote in a congressional election is to be worth as much as another's."

In *Reynolds v. Sims* (1964), 377 U. S. 533, 84 Sup. Ct. 1362, 12 L. Ed. (2d) 506, and the five other cases handed down at the same time,[4] the basic principle of equality among

[4] *WMCA, Inc., v. Lomenzo* (1964), 377 U. S. 633, 84 Sup. Ct. 1418, 12 L. Ed. (2d) 568; *Maryland Committee v. Tawes* (1964), 377 U. S. 656, 84 Sup. Ct. 1442, 12 L. Ed. (2d) 595; *Davis v. Mann* (1964), 377 U. S. 678, 84 Sup. Ct. 1453, 12 L. Ed. (2d) 609; *Roman v. Sincock* (1964), 377 U. S. 695, 84 Sup. Ct. 1462, 12 L. Ed. (2d) 620; *Lucas v. Colorado General Assembly* (1964), 377 U. S. 713, 84 Sup. Ct. 1472, 12 L. Ed. (2d) 632.

voters within a state and the fundamental principle that representative government is one of equal representation for equal numbers of people without regard to race, sex, economic status, or place of residence were applied to the apportionment of the Alabama state legislature. In reaching its conclusion the court stated legislators represent people, not trees or acres and must be elected by voters, not farms, or cities, or economic interests, if the form of our government is to remain representative.

It is true these cases dealt with a right to vote preserved in a constitution and for an office created by the constitution; but the rationale of the decisions applies equally as well to a statutory right to vote. The right to vote whether statutory or constitutional to mean anything in a representative government means the right to secure equal representation. The gist of the relator's argument in the application of this principle is that county boards are legislative instruments of the state government and should be directly representative of the people of the county. To the contrary, the respondents argue the legislature in the exercise of its plenary power may provide that supervisors represent political units and county boards need not be apportioned on a population basis. However, county boards possessing the type of legislative power which they do must be considered a unit of government which should be equally representative of the people of the county. The principle has been recognized in the history of county government and as far back as 1907 Milwaukee county supervisors were elected to represent people and elected on an assembly-district basis. While a town chairman is a member of the county board *ex officio* he is nevertheless elected in effect a supervisor when he is elected a town chairman.

Since the basic principle of representative government is that the weight of a citizen's vote cannot be made to depend on where he lives, then county boards as units of repre-

sentative government should not be constitutionally immune from the requirements of the Fourteenth amendment. The respondents argue this need not be the result because the principle of equal representation applies only to independent governmental entities which derive their power directly from the people governed. But this argument is not controlling. True, counties are created by the legislature without the direct consent or concurring action of the people directly affected. *State ex rel. Bare v. Schinz* (1927), 194 Wis. 397, 216 N. W. 509. Characterizing counties as "political subdivisions created to perform functions of the state locally and existing as a result of the superimposed will of the state" or as "pure auxiliaries of the state" or as "an arm of the state" or "local organizations" which "rank low down in the scale or grade of corporate existence," or quasi municipal corporations, *Frederick v. Douglas County* (1897), 96 Wis. 411, 71 N. W. 798; *Crowley v. Clark County* (1935), 219 Wis. 76, 261 N. W. 221, is not determinative of whether the Fourteenth amendment applies to their composition when the members of a county board are determined by the elective process. Or stating it another way, admitting such characterizations, does it follow that in a representative government the people should not have equal representation even in the lowest rank in the scale? We do not subscribe to the argument that because the composition and powers of counties are statutory in origin the principle of equal representation does not apply.

Although the legislative power of a county may in fact be limited by the statutes, nevertheless the constitution by sec. 22, art. IV empowers the legislature to confer on the board of supervisors such powers of a local, legislative and administrative character as it shall from time to time prescribe. Under this authorization the legislature in ch. 59, Stats., has granted a substantial bundle of legislative powers to county boards and may grant additional substantial powers. Such

powers are not to be confused with the powers of administrative boards and commissions to enact rules and regulations even though the latter have the effect of law. Since the composition of the legislature must conform to the principle of equal representation, it is logical that the arm or political subdivision of such legislature enacting legislation should be governed by the same principle of equal representation.

The fact the county also performs administrative functions and is somewhat responsive or subject to the legislature does not justify the denial of the application of the equal-representation principle to county boards. Solely administrative duties would not call forth the application of the principle, nor do these administrative duties or the limited legislative powers destroy the fact that realistically the county today is a unit of government with vital powers over the lives of its residents. Those powers, which it may now exercise or may be given as a legislative body, require in our form of government the principle of equal representation be applied. We do not now decide every legislative function requires representative elective execution. We hold only that the principle of equal representation applies to a county board of supervisors when that board is given legislative power and is composed of elective members.

We see no validity in the respondents' arguments that since the county is a creature of the legislature under its plenary power it stands on the same footing by analogy as the District of Columbia and territories of the United States. This analogy goes only to the lack of an express provision in the constitution granting the right to vote and not to the question of whether when under the plenary power the right to vote is provided for, it must be on the one man-one vote principle. When the latter is the case, to be a valid vote it must be a vote that will insure equal representation. Although the legislature was given the power to determine the type and form of county government, it is mandatory by the

constitution that the legislature establish a uniform system of county government. The legislature is not free to eliminate the county as a unit of government. In exercising that power the legislature must act within the constitutional restrictions of the equal-protection clause. *Gomillion v. Lightfoot* (1960), 364 U. S. 339, 81 Sup. Ct. 125, 5 L. Ed. (2d) 110; see also *State ex rel. La Crosse v. Rothwell* (1964), 25 Wis. (2d) 228, 130 N. W. (2d) 806. Can it be successfully argued today that the legislature could provide for the election of supervisors of the county board on the basis of race, creed or color? We think not. Nor do we believe that an increase or dilution of the weight of votes on the basis of political subdivisions or of the character of the area in which people live can be justified by the plenary-power argument.

We find no merit in the argument that unless the United States supreme court expressly first determines the equal-protection clause of the Fourteenth amendment applies to county-board membership, the Tenth amendment reserving powers to the state not delegated to the United States is applicable. This argument overlooks the fact that it is the duty of this court to decide questions properly presented to it whether they have been expressly decided by the United States supreme court or not, and further since sec. 1, art. I of our constitution is the equivalent of the Fourteenth amendment of the United States constitution, the effect of that amendment is necessarily involved in construing our state constitution.

Cases from other states cited in the briefs are not especially helpful because of the particular constitutional or statutory provisions involved. Under a California statute, which expressly permitted the board of supervisors to redistrict provided "the districts shall be as nearly equal in population as may be," the cases hold the statute was mandatory and the board was required to redistrict on the population basis. *Griffin v. Board of Supervisors of Monterey County* (1963),

60 Cal (2d) 318, 33 Cal. Rptr. 101, 384 Pac. (2d) 421; *Henderson v. Superior Court of Marin County* (1964), 37 Cal. Rptr. 438, 390 Pac. (2d) 206; and *Miller v. Board of Supervisors of Santa Clara County* (1964), 37 Cal. Rptr. 440, 390 Pac. (2d) 208. A similar result was reached involving a law requiring the apportionment of city wards on a population basis in *State ex rel. Scott v. Masterson* (1962), 173 Ohio St. 402, 183 N. E. (2d) 376. Two other cases cited in the briefs involved malapportionment—one, of wards of a parish; the other, of a county board, but neither was decided on the merits. *Simon v. Lafayette Parish Police Jury* (W. D. La. 1964), 226 Fed. Supp. 301; *Bianchi v. Griffing* (E. D. N. Y. 1963), 217 Fed. Supp. 166. Not directly in point are *Hedlund v. Hanson* (D. C. Minn. 1962), 213 Fed. Supp. 172, and *Ludwig v. Board of County Commissioners of Sarpy County* (1960), 170 Neb. 600, 103 N. W. (2d) 838, although dealing with the problem of alleged malapportionment of county commissioners.

There is no case of a court of last resort of any state decided since *Baker v. Carr, supra,* which involves the issue presented to this court. There are, however, two cases holding that the Fourteenth amendment requires equal representation on boards of governmental bodies below the level of the state legislature. In *Brouwer v. Bronkema,* Case No. 1855 (Cir. Ct. Kent County, Mich., Sept. 11, 1964), the trial court determined the equal-protection clause of the federal constitution required the membership of the county board of supervisors in Michigan be apportioned on a population basis. In arriving at this conclusion the court reasoned: (1) The Fourteenth amendment applied to the state and every governmental agency which exercised legislative powers delegated to it by the state, (2) the county was a governmental instrumentality or division of the state, and the board of supervisors was the legislative body of the county exercising such power, and (3) the state may exer-

cise its legislative power only in a legislative body apportioned on a population basis and if it delegates a part of those powers, it must do so to a legislative body apportioned according to the same "basic constitutional standard." The other case is *Ellis v. Mayor and City Council of Baltimore* (D. C. Md. 1964), 234 Fed. Supp. 945. The city charter provided the voting districts should be apportioned on the basis of registered voters rather than population. It was held that the districts composing the city of Baltimore were disproportionate in population and under the Fourteenth amendment as now construed by *Reynolds v. Sims* and the companion cases, *supra*, the plaintiff was entitled to equal protection of laws in his representation on the city council.

We conclude that sec. 59.03 (2), Stats., is unconstitutional because it violates the equal-protection clause of the Fourteenth amendment of the federal constitution and sec. 1, art. I of the Wisconsin constitution. The legislature has the duty to establish a system of county government meeting constitutional standards and this court approaches this problem as it did the apportionment of the state legislature in *State ex rel. Reynolds v. Zimmerman* (1964), 22 Wis. (2d) 544, 126 N. W. (2d) 551, where, in finding the apportionment of the existing law invalid, deferred the effect of the invalidity until the legislature had a reasonable time to act. Elections will be held on April 6, 1965, before the legislature has had a reasonable time within which to act even though it has appointed a joint interim study committee for the purpose of determining the best method of apportioning representation on a county board. It cannot be said the legislature is unaware of the problem or has failed to act. Consequently, we decline to stay the April, 1965, elections at this time and hold the unconstitutionality of sec. 59.03 (2), as applied to future elections, will not be effective until the further order of this court. This type of procedure is born of

necessity and was approved in *Reynolds v. Sims, WMCA v. Lomenzo,* and *Maryland Committee v. Tawes, supra.*

The purpose of the joint interim study committee as stated in sec. 13.46 (4), Stats., is to draft a plan for the apportioning of county supervisory districts on town, village, and city lines, giving greater consideration to population representation than does the present town, village, and city ward representation, but not disregarding other factors and shall be more equitable toward population than the existing Wisconsin system. The committee is required to recommend its plan to the 1965 legislature. Reasonable time should be given this committee to complete its study and for the legislature to create a valid uniform system of county government and any implementation completed, if required. From what has been said it should be plain that a plan must not only be more equitable in respect to population than the existing system but also must establish a substantial equality of population among the various districts in a county whether or not the plan contemplates districts on town, village, and city lines.

*By the Court.*—It is adjudged and declared:

(1) Sec. 59.03 (2), Stats., denies citizens of Wisconsin the equal protection of the laws and therefore is in conflict with the Fourteenth amendment, United States constitution, and sec. 1, art. I of the Wisconsin constitution. This declaration shall have prospective effect only and its effective date shall be fixed by this court;

(2) Orderly operation of government requires that the county boards heretofore elected under sec. 59.03 (2), Stats., and to be elected thereunder in 1965 be permitted to function for a reasonable period sufficient for the enactment of new legislation to replace sec. 59.03 (2), and that the validity of acts of boards so elected should not be challenged upon the basis of this decision;

(3) This court retains jurisdiction and if for any reason a system of county government in accordance with constitutional standards is not provided by November 1, 1965, the relators or other parties interested may apply to this court for an order to fix a date as of which county boards elected under sec. 59.03 (2), Stats., shall no longer be validly in office, to enjoin elections of members of county boards pursuant to said statute, or for other appropriate relief.