STATE EX REL. ADAMS and others, Appellants, vs. RADCLIFFE and others, Respondents.

*October 12—November 6, 1934.*

The cause was submitted for the appellants on the brief of *O'Melia & Kaye* of Rhinelander, and for the respondents on that of *G. M. Sheldon* of Tomahawk.

Briefs were also filed by the *Attorney General* and *Joseph G. Hirschberg,* deputy attorney general; by *Hile & Dahl* of Superior; and by *Hanitch, Fritschler & Barstow* of Superior and *C. J. Strang,* district attorney of Burnett county, as *amici curiæ.*

WICKHEM, J. The sole question presented is the constitutionality of sec. 59.95 of the statutes, and it is unnecessary to recite the facts as alleged in the complaint further than to state that this controversy involves an attempt on the part of Vilas county to exercise the option in sec. 59.95, and to adopt the commission form of county government. The steps in this attempt were initiated February 20, 1933, and the election favoring the adoption of this form of government was held April 4, 1933. It is contended by relators that sec. 59.95, of the Wisconsin Statutes, as it stood prior to the enactment of ch. 472, Laws of 1933, as well as the section as amended by this chapter, violates sec. 23, art. IV, of the Wisconsin constitution.

Sec. 23, art. IV, of the Wisconsin constitution, provides:

*"Uniform town and county government.* Section 23. The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

Sec. 59.95 provides in substance that any county in this state may reorganize under sec. 59.95 by proceeding as provided in said section. The section provides for a petition by electors equal to ten per cent of the votes cast by all parties in the county for governor at the last preceding election. It provides for the filing of this petition in the office of the county clerk at least forty days prior to the first Tuesday in April in any year, and upon this filing the county clerk is directed to call a special election on the first Tuesday in April following receipt of the petition, "for the purpose of submitting to the electors the question of reorganizing said county under sec. 59.95 of the statutes." The section provides for the usual notice of special election, and prescribes that the ballots shall be in substantially the following form: The electors are to place a cross after the word "Yes" "if you desire to vote for the county commissioner form of govern-

ment." The question prescribed is: "Shall the county commissioner form of government, as outlined in section 59.95 be adopted in the county of . . . ?" It is provided that if a majority shall be in favor of reorganization, the plan as outlined in section 59.95 shall be adopted. It is provided that the affairs of a county after so reorganizing, under the provisions of sec. 59.95 shall be conducted by a county board of commissioners, which shall supplant and supersede the county board of supervisors. The number of commissioners in each county shall be as follows: In counties having a population of twenty-five thousand or less, three commissioners; in counties having a population of over twenty-five thousand and less than forty thousand, five commissioners; in counties having a population of over forty thousand and not more than sixty thousand, seven commissioners; in counties having a population of over sixty thousand and less than two hundred and fifty thousand, nine commissioners. Upon the adoption of this form of county government, the county board of supervisors, within certain time prescribed, are required to divide the county into as many compact and contiguous commissioner districts as the county is entitled to commissioners. The act includes a provision for redistricting after each United States census, and for the election of commissioners. Provision is made for an annual salary to be received by the commissioners, with maximum limitations prescribed which vary according to the population of the counties. It is provided that when the commissioners shall have been elected and shall have qualified and organized, all duties, liabilities, authority, powers, and privileges theretofore imposed or conferred by law upon the county board of supervisors shall be conferred upon the county board of commissioners.

In *State ex rel. Peck v. Riordan and others,* 24 Wis. 484, a private and local law provided for eight supervisors in

Washington county and was held unconstitutional under this section of the constitution. It was there contended that the word "system" is synonymous with the word "plan," and that the object of the constitutional provision was satisfied when the legislature devised one system or plan of county government, by which certain general powers of local government and police regulation were delegated to the counties organized; that the legislature is free to act to determine how many persons may exercise the powers and perform the duties devolved by general laws upon the county boards of supervisors, and that it may increase or diminish the number of members in any particular county in its discretion. The court repudiated this contention and stated that the constitutional "provision not only requires that the system established shall be one system—that is, that all the counties organized shall be invested with the same general powers of local government delegated to them, and have the supervisor system of county government, if that is the one adopted—but likewise, that this system shall be as nearly uniform as circumstances will permit." It was held that this law created an unnecessary diversity and was void.

In *State ex rel. Grundt and others v. Abert,* 32 Wis. 403, the court held that an enactment which destroys the unity of the system of county government, *or* which unnecessarily interferes with its uniformity in any material respect, is not a valid law.

Thus, at the outset, it will be seen that the constitutional provision here involved must be examined in two distinct aspects. The first is the requirement that one system of county government shall be established. The occasion for the enactment of this portion of sec. 23, art. IV, is discussed by this court in *State ex rel. Busacker v. Groth,* 132 Wis. 283, 112 N. W. 431. The court there said:

"At and prior to the time of the adoption of the constitution there existed considerable diversity in town and county

government in the territory of Wisconsin. · In some counties there were three county commissioners elected at large, and in some a board of supervisors consisting of the chairmen of the town boards of the constituent towns. By the revised statutes of the territory (Terr. Stats. 1839, pp. 103, 104, §§ 1–9) there appears to have been a uniform system of county government vested in a board of three county commissioners whose general powers were provided for by sec. 13, p. 105. Soon after this the territorial assembly began to organize town governments by special acts and also to organize new counties, some of which were governed by a board of county commissioners and some by supervisors. Towns were organized, but the local governments thereof were not uniform. So that on the whole there was considerable diversity in town and county government."

The second is that the system as adopted shall be as nearly uniform in its application to the different counties as is practicable. Granting that the unity of county government enjoined by the constitution has not been impaired by a particular act, the question will nevertheless remain whether an unnecessary diversity has been created by the act. In determining this question "it must also be remembered that under the repeated decisions of this court a broad discretion is vested in the legislature in determining whether the system of government under sec. 23, art. IV, of the constitution, is as nearly uniform as practicable." *State ex rel. Scanlan v. Archibold,* 146 Wis. 363, 131 N. W. 895. Nearly all of the attacks heretofore made upon laws creating diversities in particular counties have been upon the ground not that the legislature has instituted a separate or different system of county government, but that uniformity within the system has not been provided for so far as practicable. In *State ex rel. Busacker v. Groth, supra,* the opinion contains an elaborate analysis of all cases theretofore decided. A restatement of the analysis will serve no useful purpose, but it is evident that virtually all of the cases analyzed deal with the requirement of uniformity. In many cases diversities have been

considered not to violate the requirement because of a difference in population or other circumstances between counties which rendered greater uniformity impracticable. Thus, in *State ex rel. Scanlan v. Archibold, supra,* the law under examination prescribed a different unit of representation on the county board in counties of two hundred and fifty thousand or over. The objection to the act was that it violated the constitutional requirement that the system of county government be as uniform as practicable. There was no contention that it resulted in the creation of a new or different system. The contention was repudiated upon the ground that conditions in populous counties where the population is largely urban justified legislation which is somewhat different than that enacted for other counties where conditions are widely different.

In *State ex rel. Melms v. Young,* 172 Wis. 197, 178 N. W. 481, a law providing for the non-partisan nomination and election of county officers in counties having a population of more than two hundred and fifty thousand, was held an unjustifiable departure from the uniformity required by sec. 23, art. IV. Here, again, the court dealt not with an act establishing a new or different system of county government, but one which violated the separate and distinct requirement of uniformity.

From what has been said, it is evident that the requirement that there shall be but one system is absolute. The requirement that this system shall be as uniform as practicable gives to the legislature a broad discretion and authorizes some diversity so long as the integrity of the system is preserved.

Coming to the act in question, we are unable to escape the conclusion that sec. 59.95 makes optional with all counties, save one, the adoption of a fundamentally different system or form of county government, and thus violates the constitutional requirement of unity. The scheme of the statute

and the form of ballot prescribed indicate that a different system or form of government was contemplated by the legislature. It is an authorization to the counties to adopt a system of county government at least somewhat similar to one which existed in territorial times, was recognized as a different system, and created such diversity as to result in the enactment of sec. 23, art. IV. *State ex rel. Busacker v. Groth, supra.* In general, the system calls for a reduction in the number of persons who will constitute the legislative body of the county. They are to be representative of districts rather than towns. They are to have a longer term and greater compensation. On the whole, the differences between the supervisor system and that authorized by sec. 59.95, seem to be quite as marked as those existing between the aldermanic and the commission form of city government, and it is difficult to resist the conclusion that the commission form of county government operates upon the same general principles as the same form applied to city government. It is a new and fundamentally different system, and not merely a variation of the old system. It will not do to take isolated portions of sec. 59.95 to show that there are cases holding that a law providing for this particular change in a particular county has been held not to violate the constitutional requirement of uniformity. The system of government as provided for by sec. 59.95 must be considered as a whole, and if it is a new and different system the law is plainly unconstitutional. We see no escape from the conclusion that it destroys the unity of county government and constitutes a return to the very conditions described in the *Busacker Case,* which sec. 23, art. IV, was designed to prevent.

It is probably unnecessary, in view of the foregoing, to consider whether this section also violates the requirement of uniformity, but it may be stated that we also see no escape from this conclusion. The law certainly provides for radical

changes in the manner of administering county government. While acts creating diversities in particular counties have been sustained by this court upon the ground that differences in population and other conditions justified the legislature, in its discretion, in somewhat varying the details of the existing system, we know of no case and of no principle that would justify leaving to the option of the counties the adoption of a form of county government so different from that now current. Under the terms of this section, two counties with substantially similar conditions and needs may have systems of county government that are materially and unnecessarily different. It is our conclusion that even if the law were held not to violate the constitutional requirement of unity, the objection would be insuperable. Sec. 59.95, as originally adopted, is unconstitutional and void. In consequence, ch. 472, Laws of 1933, which amends it in detail, can have no validity or effect, and need not be separately considered.

*By the Court.*—Order reversed, and cause remanded with directions to overrule the demurrer.