STATE EX REL. WOLF, and another, Respondents, v. TOWN OF LISBON, and others, Appellants.

*No. 75–289. Submitted on briefs November 5, 1976.— Decided January 6, 1977.*
**(Also reported in 248 N. W. 2d 450.)**

154

For the appellants the cause was submitted on the brief of *Clayton A. Cramer* and *Cramer, Multhauf & Curran* of Waukesha.

Respondents did not file a brief.

CONNOR T. HANSEN, J. Before discussing the merits of the appeal, we deem it appropriate to consider two procedural issues.

■ On this appeal, the respondents have not filed a brief. We could, therefore, reverse "as of course" pursuant to sec. 251.57, Stats. This court has been informed that the respondents are without funds to engage counsel to prepare and file a brief, although they expressed a desire to appear and orally argue their cause, or to respond by letter. Under these circumstances and because of the issues presented, we decline to exercise our discretionary power to reverse "as of course." *Gauer v. Gauer,* 34 Wis. 2d 451, 459, 149 N.W.2d 533 (1967).

Also since the record was submitted to this court, a series of communications from both parties have been filed with us. It appears that not all of them have been directed to the opposing parties. Some of them purport to raise issues arising out of a special town meeting held subsequent to the time of the trial of the cause under appeal and, therefore, were not presented to the trial court for adjudication.

■ ■ The rule is well established that the review of the supreme court is limited to the record. *Schimke v. Milwaukee & Suburban Transp. Corp.,* 34 Wis.2d 317, 320, 149 N.W.2d 659 (1967). This court is bound by the record, and the record is not to be enlarged by material which neither the trial court nor this court, acting within their respective jurisdictions, have ordered incorporated

in it. *Ramminger v. State Highway Comm.*, 22 Wis.2d 194, 196, 125 N.W.2d 406 (1963).

■ ■ Some of the communications we have received since the transmittal of the record attempt to raise issues arising out of a special town meeting held June 23, 1976. These were not raised or considered by the trial court. In fact, they could not have been because the trial was held prior to the special town meeting. Ordinarily issues not raised or considered by the trial court will not be considered for the first time on appeal. *Fond du Lac Skyport, Inc. v. Moraine Airways*, 67 Wis.2d 109, 115, 226 N.W.2d 428 (1975); *Northern States Power Co. v. Hunter Board of Supervisors*, 57 Wis.2d 118, 132, 203 N.W.2d 878 (1973). We have determined not to consider the communications received since the transmittal of the record or the issues raised by them. They are not part of the record and they also attempt to raise issues not considered by the trial court.

The issues presented on this appeal arise out of action taken at a town meeting of the Town of Lisbon at which the number of supervisors on the town board was increased from three to five.

The specific statute involved is sec. 60.19 (1) (c), Stats., which provides:

"(c) Increases or reductions in membership of town boards shall take effect from January 1 of the first odd-numbered year following the most recent federal decennial or special census, but shall not be deemed to create any vacancy on a town board prior to the spring election. Commencing with the 1971 spring election or any spring election thereafter the town board of any town having a population of 2,500 or more may, subject to the authorization of the majority of the electors voting at an annual or special town meeting, consist of 5 supervisors elected at large. Three members shall constitute a quorum of 5-member town boards."

On April 9, 1974, the Town of Lisbon held its annual town meeting. Present were the appellants, the respon-

dents, the town clerk, the town lawyer, and about 150 town residents.

At the meeting, respondent-Sandroni moved to increase the town board of supervisors from the present three members to five members, one chairman and four supervisors, all elected at large. The motion was seconded; there was discussion; a proposed amendment thereto was defeated; and a voice vote was taken. The official minutes of the town meeting state:

"The motion to enlarge the Board from three members to five members was passed by voice vote. Approval was also given to increase the budget to provide salaries for the two additional supervisors. However, the question of legality arose and Attorney Cramer is to check this out."

On May 31, 1974, the town lawyer, by letter, presented the town board with his opinion as to the legality of the action taken on April 9, 1974. The town lawyer, based upon an earlier Attorney General Opinion, 63 Op Atty Gen (1974) 105, determined that the creation of a five-man town board in the manner authorized by secs. 60.19 (1) (am) and 60.19 (1) (c), Stats., would violate art. IV, sec. 23 of the Wisconsin Constitution. Accordingly, the town lawyer recommended that no action be taken by the town board to create a five-man board.

The opinion and recommendation of the town lawyer were presented at a meeting of the town board of supervisors on June 10, 1974, while the respondents were present.

The appellants followed the recommendation of the town lawyer and proceeded to give notice of and to make preparations for the holding of the April 1, 1975, spring election, with only three supervisor positions indicated on the ballots.

On March 24, 1975, the respondents commenced the instant proceeding. Proper pleadings were served and

filed by the respective parties and a hearing was held on March 31, 1975.

Following the hearing, the circuit court found as findings of fact that the timing of the instant action precluded any possibility of relief being granted prior to the already scheduled April 1, 1975, election; and that the resolution passed by the electors at the April 9, 1974, annual town meeting to increase the town board from three to five members was now binding, mandatory and nondiscretionary upon the existing town board. The circuit court held, as conclusions of law:

"That the responsible officials of the Town of Lisbon take all of the necessary legal steps to hold a special election for the election of five town supervisors to be elected at large as provided in Section 60.19 (1) (a) (c) of the Wisconsin Statutes.

"That the election held on April 1, 1975, for the Town of Lisbon, Wisconsin, as it effects the positions of Town Chairman and Supervisors be and the same is hereby declared null and void, and that a new election be held for Town Supervisor of the Town of Lisbon, Wisconsin, at which five supervisors shall be elected to represent the Town of Lisbon, Wisconsin, and that said new election shall be held forthwith.

"That the plaintiffs are entitled to a Pre-emptory Writ of Mandamus as prayed for in their petition, thereby compelling the responsible officials of the Town of Lisbon to take all necessary legal steps to hold the special election for the election of five Town Supervisors to be elected at large to the Town Board of the Town of Lisbon as provided in Wisconsin Statute."

On June 9, 1975, a judgment declaring the April 1, 1975, election null and void and a judgment awarding a pre-emptory writ of mandamus implementing the conclusions of law of the trial court as heretofore set forth was entered and filed. This appeal followed.

We are of the opinion that resolution of three issues is dispositive of this appeal. They are:

1. Does sec. 60.19(1)(c), Stats., which allows the electors to increase the membership of their board of supervisors from three to five members violate the provisions of art. IV, sec. 23 of the Wisconsin Constitution?

2. Was the action taken by the electors at the April 9, 1974, annual town meeting a conditional or a mandatory direction to the board of supervisors to increase its membership from three to five members?

3. If an increase from three to five members is required, must all five members be elected at a single election or should terms be staggered?

## CONSTITUTIONALITY.

The thrust of the appellants' argument is that secs. 60.19(1)(am) and 60.19(1)(c), Stats., violate art. IV, sec. 23 of the Wisconsin Constitution which provides in pertinent part, as follows:

". . . The legislature shall establish but one system of town government, which shall be as nearly uniform as practicable; . . ."

Sec. 60.19(1)(a), Stats., provides for the election of three supervisors for a town. Secs. 60.19(1)(am) and 60.19(1)(c) provide two methods by which the number of supervisors in a town may be increased.

Sec. 60.19(1)(am), Stats., sets forth a procedure whereby a town board of any town exercising the powers of a village[1] may, by *ordinance* increase the number of supervisors to not more than five.

The electors of the Town of Lisbon on April 9, 1974, at the annual town meeting, voted to increase the membership of their board of supervisors from three to five members. At that time, the population of the Town of

---

[1] *See:* Secs. 60.29(13), 60.18(12), and 61.34, Stats.

Lisbon was over 2,500. The 1970 federal census of the Town of Lisbon, of which this court may take judicial notice, indicated a population of 4,709. The town board passed no ordinance to increase the board membership, and it is clear that the electors were proceeding under sec. 60.19(1)(c), Stats., as authority for the increase. Since the electors relied solely upon sec. 60.19(1)(c) as the basis for their authority to increase the number of supervisors, we do not address the issue of the constitutionality of sec. 60.19(1)(am).

What the appellants really contend is that because the **legislature has by general legislation, established a procedure** whereby the electors of towns having a population over 2,500 may, by vote, decide to have five instead of three supervisors, the uniformity clause of art. IV, sec. 23, Wis. Const., is violated.

Prior to a 1972 constitutional amendment, the pertinent part of art. IV, sec. 23, read: "The legislature shall establish but one system of town *and county* government, which shall be as nearly uniform as practicable." (Emphasis added.) Thus, any pre-1972 cases cited which deal with county government are equally applicable to town government insofar as it is controlled by this constitutional provision. *Thompson v. Kenosha County,* 64 Wis.2d 673, 690, 221 N.W.2d 845 (1974) ; *West Allis v. Milwaukee County,* 39 Wis.2d 356, 372, 159 N.W.2d 36 (1968).

Before the time of the adoption of the constitution, there existed considerable diversity in town and county government within the territory. Both the supervisor and the commissioner systems were utilized by the various counties and town local government organization was not uniform. *State ex rel. Busacker v. Groth,* 132 Wis. 283, 112 N.W. 431 (1907). Such diversity in the form and organization of local government led to the enactment of art. IV, sec. 23, Wis. Const. *State ex rel. Adams v. Radcliffe,* 216 Wis. 356, 363, 257 N.W. 171 (1934).

Article IV, sec. 23, Wisconsin Constitution, was first interpreted by this court in *State ex rel. Pack v. Riordan, et al.,* 24 Wis. 484 (1869). There this court recognized that the constitutional provision encompassed two distinct aspects: Unity and uniformity. This court stated at page 488:

". . . For the provision not only requires that the system established shall be one system—that is, that all the counties organized shall be invested with the same general powers of local government delegated to them, and have the supervisor system of county government, if that is the one adopted—but likewise, that this system shall be as nearly uniform as circumstances will permit. . . ."

*See also: Thompson, supra,* 690; *State ex rel. Milwaukee County v. Boos,* 8 Wis.2d 215, 221, 99 N.W.2d 139 (1959); *Adams, supra,* 358, 359; and 1959 Wisconsin Law Review 30, 41.

■ The unity requirement mandates that the principal organizational features of town government must be the same. That is, the plan or scheme by which the towns are to be governed must be one and the same plan or scheme. *Busacker, supra,* 298, 299; *The Chicago & Northwestern Ry. Co. v. Langlade County, et al.,* 56 Wis. 614, 623, 14 N.W. 844 (1883). If the legislature establishes the board of supervisors as the governing scheme for towns, then all towns must utilize that system. The requirement is absolute. *Busacker, supra; Adams, supra.*

Thus this court in *Adams, supra,* found a violation of the unity requirement where a statute authorized any county to reorganize by adopting a county commission form of government to supplant and supersede the then existing county board of supervisors.

There is no argument raised in the instant case, that the unity requirement of art. IV, sec. 23 of the constitution has been violated. Regardless of the number of member supervisors, the basic board of supervisor form of town government is preserved by sec. 60.19 (1) (c), Stats.

■■ The uniformity requirement has been consistently interpreted not to require absolute uniformity in the system of government, but only practical uniformity. The system of town government shall be as *nearly* uniform as *practicable*. It is only when the enactment unnecessarily interferes with the system's uniformity in a material respect that the enactment is invalid. *State ex rel. Grundt et al. v. Abert*, 32 Wis. 403, 404 (1873). This court has theorized that the framers of the constitution recognized that some latitude had to be provided to enable the legislature to authorize departures from absolute uniformity where individual characteristics of counties and towns varied. *Busacker, supra;* 1959 Wisconsin Law Review 30, 41.

In one of the earliest interpretations of art. IV, sec. 23, Wis. Const., in answer to a claim that the constitutional provision had been designed *solely* to prevent the continuance of existing territorial diversity of local government, this court stated:

". . . But the answer to this is, that if such had been the only object, it would have been fully accomplished by the first part of the clause under consideration. When the framers of the constitution had said that the legislature should establish but one system of town and county government, that would have fully remedied the evil. But they did not stop there. They added, that this system should be as nearly uniform as practicable. In this they must have aimed at the evil of special legislation. That this is a great and serious evil, every one at all familiar with legislative experience knows. . . . It is an evil that there have been many efforts made to check; and I can conceive of no other motive for the clause in the constitution requiring the system of county and town government to be as uniform as practicable, except to prevent such special legislation, varying the system in different localities, as might not amount to an actual destruction of its unity." *State ex rel. Keenan v. The Supervisors of Milwaukee County*, 25 Wis. 339, 348 (1869).

It is clear, however, that the provision is not directed solely to special legislation. In *State ex rel. Melms v. Young*, 172 Wis. 197, 178 N.W. 481 (1920), this court, citing *Busacker, supra*, stated at p. 202:

". . . A review of the cases in this court wherein this constitutional provision was involved will be found in the opinion written for the court by Mr. Justice TIMLIN in *State ex rel. Busacker v. Groth*, 132 Wis. 283, 112 N.W. 431. It was there held, in the light of this constitutional provision, that 'a general law applicable to a class of counties may provide for reasonable departures from uniformity in county government in cases where it is not practicable to carry on such government in that particular class of counties in the same manner in which it is carried on in other counties outside of its class.' . . ."

Thus, class legislation, affecting different classes of towns or counties might exist and not be violative of the uniformity clause of art. IV, sec. 23, Wis. Const.

Classifications based upon population have generally been upheld. *State ex rel. Milwaukee County v. Boos, supra; State ex rel. Sonneborn v. Sylvester*, 26 Wis.2d 43, 132 N.W.2d 249 (1965); *West Allis v. Milwaukee County, supra*. There is no doubt that sec. 60.19(1)(c), Stats., sets up a classification based upon population in that it is only applicable to towns with populations over 2,500.

The appellant appears to contend, however, not that the classification fails because it is not based upon a clear showing of impracticality, but rather that the sole fact of the difference in the number of board members constitutes the constitutional violation. The appellant relies chiefly upon *Peck, supra*, and on 63 Op. Atty. Gen., *supra*, for support of his position. The Opinion of the Attorney General itself relies upon *Peck, supra*, and a former Opinion of the Attorney General, 50 Opin. Atty. Gen. (1961), 10, to reach the conclusion that sec. 60.19(1)(c), Stats., may violate the uniformity provision of art. IV, sec. 23, Wisconsin Constitution.

The reliance on *Peck, supra,* by both the appellant and the two former attorney generals is misplaced. *Peck, supra,* involved the constitutionality of a special law which provided for a county board of supervisors in only Washington county constituted of eight members while all other similarly situated counties, in terms of population, were entitled to boards of supervisors of only three members. Not only did *Peck, supra,* involve a special law which applied to only one county, but it *required* that county to have eight supervisors while all other counties of like population were entitled by law to only three supervisors. It was not the difference in the number of supervisors which constituted the constitutional violation in *Peck, supra,* but rather the mandate that in counties of the same population there would be different numbers of supervisors.

Sec. 60.19 (1) (c), Stats., sets up no such system. First, it is not a special law applicable to only one town; it is a general enactment equally applicable to all towns over a population of 2,500. Second, it does not require that the membership be increased from three to five; the section is permissive and gives the option to the electors of the town to so increase the membership of their board of supervisors.

It cannot legitimately be argued that a board of supervisors in one town may not require more members for the proper functioning of government than a board of supervisors in a less populated town. This court in *Peck, supra,* recognized such a distinction when it noted that the general law then applicable provided for more supervisors than three in the more densely populated counties.

Population may readily dictate the number of supervisors necessary or desirable or allowable in varying sized towns. This court reached just such a conclusion in dealing with the law which entitled certain towns of a given population to exercise village powers. In *Land, Log*

*& Lumber Co. v. Brown,* 73 Wis. 294, 40 N.W. 482 (1889), the court stated at p. 302:

"To hold that this section of the constitution requires the legislature to make all laws for the government of towns applicable to every town in the state, without any regard to the wealth, population, or other peculiarities of such towns, would be to hold a very large portion of the legislation on the subject of towns in this state unconstitutional and void. . . ."

In *Thompson, supra,* while dealing with a constitutional attack on sec. 70.99, Stats., which allowed county boards to establish a county assessor system thus supplanting existing town assessor systems, and faced with an assertion that the section violated art. IV, sec. 23, Wisconsin Constitution, in that it resulted in different or nonuniform town government, this court stated at p. 690:

" 'The legislature shall establish but one system of town *and county* government, which shall be as nearly uniform as practicable. . . .' (Emphasis added.)

*"West Allis v. Milwaukee County* interpreted this provision as it then applied to counties, but the court's language is equally applicable to questions concerning town government:

" 'It appears then that the government of one county may vary from that of the others, provided the system remains untouched, and that in their details the governments vary only to the extent that it is impracticable for them to be uniform. The classifications must be reasonable.' "

Not only is the classification, here based on population, reasonable, but given the nature of the subject matter of sec. 60.19(1)(c), Stats., (*i.e.,* the size of the governing body) the grounds for enacting that section do ". . . affirmatively appear with reasonable clearness and certainty . . ." so as to warrant the departure from the minimum three member board. *Melms, supra,* p. 203.

That is, simply that the legislature may and has determined that a town with greater population than 2,500 may require and desire a larger board of supervisors than three to adequately represent its increased population.

█ A review of the previous decisions of this court considering the constitutionality of art. IV, sec. 23, together with the well-established presumption of constitutionality which attaches to all legislative acts brings us to the conclusion that the appellants have not carried the burden of establishing the unconstitutionality of sec. 60.19(1)(c), Stats. We declare it to be a constitutional enactment.

## *MANDATORY DIRECTION.*

The appellant contends that the action taken by the electors at the annual meeting on April 9, 1974, was only a conditional authorization to the town board to increase the board to five supervisors and was not a mandatory act creating a board of five supervisors. The minutes of that meeting as they pertain to the motion to increase the number of supervisors have been previously set forth herein.

The appellant argues that the language of the minutes clearly indicates that the electors had no intention of having the board act upon the motion until such time as the town lawyer was able to research the particular question of law involved and so advise the board of his opinion.

We are not persuaded by this argument. A reasonable reading of the minutes indicates that the motion was made and seconded; an amendment to present the matter to all residents by referendum was offered, discussed and defeated; and the original motion was further discussed, voted on and passed. Only *after* the motion had passed and only *after* approval was given to increase the budget

to provide salaries for the two additional supervisors, was the question of legality of the matter raised. No motion to reconsider or withdraw the vote under the provisions of sec. 60.17, Stats., or to delay the action until the town lawyer had rendered his opinion was ever made.

■ The trial court found that the motion passed by the electors at the April 9, 1974, annual town meeting was legislative in nature and was a mandatory and nondiscretionary direction to the board to increase the number of supervisors to five. The clear import of the official minutes of that meeting indicates that the motion was passed and the questions of legality only arose after passage. The evidence of record fully supports the holding of the trial court. Moreover, once the motion was passed, the duty of the board became clear and thus mandamus was the proper remedy. *Morrissette v. DeZonia*, 63 Wis.2d 429, 217 N.W.2d.377 (1974) ; *Eisenberg v. ILHR Department*, 59 Wis.2d 98, 207 N.W.2d 874 (1973) ; *State ex rel. Johnson v. County Court*, 41 Wis.2d 188, 163 N.W.2d 6 (1968).

We do not consider the specific question of whether the electors can require the board to take action which the board believes is unconstitutional. That issue was not raised, nor is its disposition essential to the outcome of this appeal.

## ELECTION.

The appellant argues that any election which may result from this appeal must provide for staggered terms as provided for in sec. 60.19 (1) (am), Stats., and not for the election of all five members at one election.

■ Had the town board, by ordinance, increased its membership from three to five members, the appellant's contention would have merit. The fact is, that the electors voted the increase under sec. 60.19 (1) (c), Stats.,

and thus sec. 60.19(1)(am) as it pertains to elections is inapplicable. Since sec. 60.19(1)(c) requires election at large of all five members, and does not provide for staggered terms on election, all five members should be elected at one election. The trial court so held, and we affirm.

*By the Court.*—Judgment affirmed.