COURT OF APPEALS
DECISION
DATED AND FILED

March 18, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP730**

Cir. Ct. No. **2016FA752**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

TATIANA S. LAITER,

    PETITIONER-RESPONDENT,

  V.

MICHAEL LYUBCHENKO,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This appeal addresses various issues arising after the May 2018 entry of a judgment of divorce that terminated the marriage of Michael Lyubchenko and Tatiana Laiter. Lyubchenko, pro se, challenges aspects of a February 10, 2020 order in which the circuit court, according to Lyubchenko: (1) "erred when it failed to rule on how the parties would claim [income tax exemptions for] dependents on 2017 and 2018 tax returns"; (2) "erred" in finding the amount of tax refund to Laiter for tax year 2015; (3) "erred in failing to sanction Laiter for perjury and fraud and denied Lyubchenko due process"; and (4) erroneously exercised its discretion in determining that Lyubchenko's motion to supplement the record for an appeal different from this one was frivolous. In the Discussion section below we explain Lyubchenko's arguments and why we reject them. Accordingly, we affirm all challenged aspects of the order.

## BACKGROUND

¶2 The following background is found in an opinion resolving a prior appeal in this case,

> Lyubchenko and Laiter were married in 1998 and, following a trial, were divorced effective August 31, 2017. The parties had two children together, one of whom was a minor at the time of their divorce. The circuit court entered an order on February 5, 2018, resolving the issues of maintenance, property division, child support, and insurance expenses for the parties' minor child. The order required Lyubchenko to pay Laiter an equalization payment of $56,063 by March 15, 2018. Lyubchenko moved for reconsideration, and the circuit court denied his motion. The circuit court then entered findings of fact, conclusions of law, and a judgment of divorce on May 23, 2018.

*Laiter v. Lyubchenko*, No. 2018AP624, unpublished slip op. ¶2 (WI App Nov. 7, 2019); *see also id.*, ¶¶5-16 (rejecting Lyubchenko's arguments related to the

circuit court's division of property and remanding for the circuit court to exercise its discretion on the issue of who is to pay for visitation-related travel expenses).

¶3     The circuit court held a hearing on February 5, 2020, to address various issues raised by the parties, the results of which the court memorialized in a February 20, 2020 order.  Lyubchenko now appeals aspects of this order.

## DISCUSSION

### I.     THE INCOME TAX DEPENDENCY EXEMPTION ISSUE

¶4     Lyubchenko purports to raise issues related to circuit court decisions resolving which of the two, Lyubchenko or Laiter, could claim the income tax dependency exemptions for tax years 2017 and 2018 for their two children after the parties stopped filing joint returns.  Lyubchenko contends that "the circuit court effectively relinquished its jurisdiction" by failing to respond to Lyubchenko's purported request that he be allowed to claim exemptions for the older child for 2017 and for the younger child for 2018, and that as a result this court must "order Laiter to compensate him for" the taxes he would not have paid if he had been allowed to claim the older child on his 2017 tax return and "issue a ruling allowing Lyubchenko to refile his 2018 tax return to claim" the younger child.

¶5     A circuit court's decision addressing how to award an income tax dependency exemption for a minor child is an aspect of child support that is decided by the circuit court within its discretion; reversal is not appropriate unless the circuit court erroneously exercised that discretion.  *See Fowler v. Fowler*, 158 Wis. 2d 508, 526-27, 463 N.W.2d 370 (Ct. App. 1990).  "[A] discretionary determination must be the product of a rational mental process by which the facts

3

of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). We will uphold a circuit court's discretionary decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Long v. Long*, 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995).

¶6　Although the proper exercise of discretion contemplates that the circuit court adequately set forth its reasoning, when it fails to do so we may search the record to determine whether the record supports the court's decision. *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. If the facts support the court's exercise of discretion, we will uphold the decision. *Franke v. Franke*, 2004 WI 8, ¶55, 268 Wis. 2d 360, 674 N.W.2d 832.

¶7　We reject Lyubchenko's argument on two alternative grounds, either of which would be sufficient for affirmance. First, Lyubchenko requests relief to which he is not entitled based on his own premise that the circuit court failed to address the two exemption issues that he raises on appeal. It is unclear what Lyubchenko means by arguing that the circuit court "relinquished its jurisdiction." But in any case, if as Lyubchenko contends the circuit court failed to address the issues he raises, then the proper remedy would be for this court to remand to the circuit court for it to exercise its discretion in the first place, and he does not seek this remedy. *See, e.g.*, *Schroeder v. Schroeder*, 100 Wis. 2d 625, 639, 302 N.W.2d 475 (1981) (in the absence of adequate findings and determinations to support civil contempt in divorce case, remanding for circuit court to make appropriate determinations). It is for the circuit court in the first instance to

exercise its discretion to address issues of this type that have been properly raised, not for this court to take them up for the first time.

¶8 Second, Lyubchenko fails to show that the circuit court erroneously exercised its discretion in addressing all tax exemption issues that he clearly and consistently presented to the court. Our conclusion on this point rests in part on Lyubchenko's failure to present a clear and consistent request to the circuit court on the topics he now raises. We now provide pertinent background and explain our conclusion further.

¶9 After the circuit court issued the February 5, 2018 order resolving major post-judgment issues referenced above, Lyubchenko submitted a March 19, 2018 pleading. In this pleading, Lyubchenko requested in pertinent part that the court allow him to claim the dependency tax deduction for his older child for the tax year 2017, while allowing Laiter to claim the deduction for the younger child for tax year 2017. Going forward, Lyubchenko proposed, Laiter could claim the deduction for the older child until she reached majority and the parties would alternate claiming the younger child (*i.e.*, Lyubchenko-2018, Laiter-2019, Lyubchenko-2020, etc.).

¶10 After this, on June 18, 2019, Lyubchenko appended what he now calls an "additional request" to a motion for reconsideration of a June 13, 2019 order addressing an unrelated contempt issue. In this "additional request," Lyubchenko again asked the court to allow him to claim the younger child "on all his even year tax returns, starting with 2018 until she reaches the age of majority (2018, 2020, 2022, 2024)." This time, however, he also made an alternative request:

> In 2017 [Laiter] claimed both children on her tax return without asking [Lyubchenko]. Since [Lyubchenko] paid child support for both children, paid for their insurance and medical and part of college expenses, he asks the Court to allow him to refile his 2017 tax returns claiming his elder daughter … similar to how he was allowed to do in 2016. Alternatively, [Lyubchenko] will accept an equalizing payment from [Laiter] for the difference between his with and without dependent tax refunds (approximately $1,000). [Lyubchenko] has already provided [Laiter] with his 2017 tax return.

¶11 More than six months after making the "additional request," on January 6, 2020, Lyubchenko submitted a letter to the circuit court seeking various forms of relief. This letter presented a scheme to address the dependency deduction issue that varied somewhat from the prior ones. He still sought the deduction for the older child for 2017, but then stated:

> [Lyubchenko] believes it is only fair that he is allowed to claim his younger daughter … and associated child tax credit on his tax return in 2019, 2020, 2022 and 2024, with [Laiter] claiming [the younger daughter] on her 2017, 2018, 2021, 2023, 2025 tax returns.

Thus, under the new proposed scheme, the court would award Lyubchenko the deduction for the older child for 2017 (as he had previously requested), but he now asked to be awarded the deduction for the younger child for 2019, but not for 2018 (contrary to his prior positions). Further, this formulation did not refer to the concept of an "equalizing payment," nor did it incorporate by reference any argument previously presented to the court or attempt to clarify the discrepancies.

¶12 Then, compounding the potential for confusion, at the February 2020 hearing, Lyubchenko failed to make a request regarding the exemption for the older child and omitted the prior request for the exemption for the younger child for the tax year 2018. The following is all of the pertinent discussion from the

6

hearing, with italics now added to emphasize the pertinent request that Lyubchenko made at the hearing:

> MR. LYUBCHENKO: I also made the request at phone conference about tax exemption. I believe the issue was brought to your attention at the same time as the travel in March, and it still remains unruled on. And the final order that was issued in May of 2018 does not have any provision—doesn't say any way which—who's supposed to claim—so in other words, [Laiter] can't claim because there's no order saying that I'm allowed to—

> ….

> … [T]he Court never addressed the issue of tax consequences as [Laiter] continues to claim both children.

> *So I would ask the Court to allow me to claim [the younger child] for 2019, '20, '22 and '24.*

> [Laiter] claimed [the younger child] in 2017 and 2018.

> THE COURT: And you're asking for what? '19—

> MR. LYUBCHENKO: *'19, '20, '22 and '24, and [Laiter] can claim her in—she already claimed her in '17, '18. She will claim her in '21, '23, and '25.*

> [COUNSEL FOR LAITER]: You can decide, Your Honor, whether this issue is before you or not. He is totally wrong. The custodial parent has the right to claim the child. I have the tax code. [Laiter] had every right to claim the child and—

> MR. LYUBCHENKO: — I'm not saying that—

> THE COURT: —Stop. Don't talk while [Laiter's counsel is] talking.

> [COUNSEL FOR LAITER]: We are requesting that my client be allowed to claim the child. He is wrong. I have my client's tax returns here.

> The older child has aged out and is not claimed on your taxes; is that correct?

> MS. LAITER: Um ... [inaudible.]

[COUNSEL FOR LAITER]:  There's only one minor child. And we are asking that Ms. Laiter be able to continue to claim her.

THE COURT: But … it's fairly typical that parties alternate if child support is current, that they alternate a tax exemption.

[COUNSEL FOR LAITER]: This has been an atypical case, Your Honor and—

THE COURT: I … do understand that, I do understand that—

[COUNSEL FOR LAITER]: —there has been a lot of litigation going on, and I know this is the issue in front of you today, but certainly, he shouldn't claim '19.

THE COURT:  So—so even years?

[COUNSEL FOR LAITER]:  If that's your ruling.

THE COURT:  Michael, I'll give you even years.

MR. LYUBCHENKO:  Well—

THE COURT:  No.  That's my—no.  Don't argue with me, or you know what?  We can go back to her claiming—you know, don't argue yourself out of something that you just got here.

MR. LYUBCHENKO:  So then I only get ...

THE COURT:  You get '20, '22 and '24.

MR. LYUBCHENKO:  Okay.

THE COURT:  All right.  Now let's move on to [a different issue].

¶13     This passage appears to reflect Lyubchenko conceding that Laiter could claim the exemption for the younger child for tax years 2017 and 2018.  In any case, it shows that at no point during this critical point in his advocacy on this issue did Lyubchenko request the relief that he now seeks, namely, permission to claim the exemption for the older child for 2017 and for the younger child for

8

2018 tax years. Further, it is significant that the concept of an equalizing payment is also missing from his arguments here. This was yet one more unexplained shifting element in the relief requested. Thus, at a minimum, at the hearing Lyubchenko allowed the court to treat the exemptions for the 2017 and 2018 tax years as a settled matter in favor of Laiter, with no suggestion of the need for an equalizing payment. As a result, at this hearing the court could fairly treat the arguments of Lyubchenko and opposing counsel as if the court was being asked to decide, going forward, whether to award the tax years 2019, 2020, 2022, and 2024 to Lyubchenko (his request) or all years to Laiter (her request). The court settled on a compromise going forward, which the court noted is a conventional approach, of awarding alternating years to the parties, as long as Lyubchenko is "substantially current" on child support obligations.

¶14 On February 20, 2020, Lyubchenko filed a motion to reconsider. This motion harkened back to the March 19, 2018 pleading in which, as summarized above, Lyubchenko had requested permission to claim the deduction for the younger child for all even years starting with tax year 2018. In the reconsideration motion, Lyubchenko argued that the court at the February 2020 hearing had failed to address any tax years other than 2020-2024, and "[a]s such, the tax years 2017 and 2018 are still not ruled on," and on this basis he asked the court "to update the February 10, 2020 order specifically allowing him to refile his 2017 and 2018 taxes claiming his [older child] in 2017, and his [younger child] in 2018." The reconsideration motion made no reference to the "relinquished jurisdiction" concept that he now raises on appeal. It also did not attempt to explain why Lyubchenko had failed to present these arguments at the hearing. The court denied the reconsideration motion in a summary fashion without holding a hearing.

9

¶15   On this record, we conclude that the court properly exercised its discretion in (1) treating the exemptions for the tax years before 2020 as settled in favor of Laiter when they were claimed by her, and (2) awarding alternating years to each party going forward.   The court made clear that it gave serious consideration to awarding *no* years going forward to Lyubchenko, based on what Laiter's counsel referred to as the "atypical" nature of the litigation to date.

¶16   Regarding this "atypical case" topic, Laiter points out that the same circuit court judge who made the challenged decisions had presided over this case since 2016, and further suggests that the court had a reasonable basis to award *all* of the exemptions to Laiter (as she requested at the hearing) because the court was aware of the following "atypical" conduct:   "Mr. Lyubchenko's contemptuous actions … his repeated frivolous filings, and the substantial amount of attorney fees that Ms. Laiter has [incurred] as a result of having to defend against Mr. Lyubchenko's overlitigation."   In his reply brief, Lyubchenko does not deny those characterizations.   He merely asserts that, regardless of the nature of litigation conduct, it must be "irrelevant," but without developing an argument that the court could not rely on this history in exercising its broad discretion on these issues.

¶17   As for his motion for reconsideration, Lyubchenko fails to provide authority for the proposition that on this record the circuit court, having resolved the issues at the hearing based on the specific arguments presented, was obligated to prolong this long-litigated divorce case yet further to revisit these issues.

¶18   Lyubchenko may mean to argue that he is entitled to some form of relief because the circuit court should have made determinations on these issues more promptly.   If so, he fails to develop an argument supported by authority that the court was obligated to act in any particular manner at any particular time

before it made its pertinent rulings. Lyubchenko references rules of our supreme court that require judges to "dispose of all judicial matters promptly and efficiently" and to avoid unnecessary delay, but he fails to show how the circuit court here violated these rules, particularly given the many requests and overlapping issues with which the court was presented in this heavily litigated case. *See* SCR 60.04(1)(h), (1)(hm). Further, Lyubchenko does not take the minimal first step of identifying a consistent argument that he presented to the circuit court and that aligns with his current position.[1] A party cannot complain that circuit court delay on an issue caused the party to be deprived of a specific form of relief on the issue when the party did not clearly and consistently pursue that specific form of relief in the circuit court.

¶19 Using provocative language, Lyubchenko alleges that the circuit court deliberately delayed its rulings in order to "essentially harass[]" him "into abandoning" arguments. Such baseless, ad hominem attacks only serve to highlight the absence of developed, supported arguments.

## II. AMOUNT OF TAX REFUND

¶20 Lyubchenko argues that the circuit court improperly credited testimony by an accountant that Laiter received a particular amount of tax refund money for the 2015 tax year and not the greater amount that Lyubchenko contends she received. We conclude that he merely raises questions on this topic and fails

---

[1] We recognize that almost two years passed between March 2018, when Lyubchenko apparently first raised the exemptions issue, and February 2020, when the court made its challenged rulings. In itself, the passing of tax years and the filing of returns in the meantime might reasonably have called for Lyubchenko to adjust his requests to the circuit court in some ways. However, in the circuit court he did not adjust his requests in a manner that he clearly attributed to changed circumstances given the passage of time.

to show that the great weight and clear preponderance of the evidence undermines the circuit court's finding based on the accountant's testimony.

¶21    We review the circuit court's findings of fact for clear error. *Sellers v. Sellers*, 201 Wis. 2d 578, 586, 549 N.W.2d 481 (Ct. App. 1996); WIS. STAT. § 805.17(2) (2019-20).[2]  "Under this standard, even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the finding," and reversal is appropriate only when "the evidence supporting a contrary finding" "constitute[s] the great weight and clear preponderance of the evidence." *Id.*

¶22    At the same February 5, 2020 hearing referenced above, an accountant for Laiter, referencing documentary evidence and relating interactions she had with Internal Revenue Service employees, testified that Laiter received a refund of $2,083.33.   In contrast, relying on an IRS "account transcript," Lyubchenko argues that Laiter received two refunds totaling $8,742.18.   The circuit court credited the accountant's testimony.

¶23    One thrust of Lyubchenko's argument is that the circuit court did not allow him to present argument or "submit any evidence."  It is true that the court limited Lyubchenko's presentation during the course of the hearing, expressing both a strong interest in resolving the case expeditiously and frustration with Lyubchenko's conduct in the litigation.[3]  But he fails to persuade us that it could

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] More specifically, the circuit court expressed frustration with a pattern in the case of Lyubchenko, "time after time," making allegations on tax-related issues without the benefit of training in the area or support from any expert, in contrast to Laiter, who relied on the same accountant for various issues.  As the court noted at the hearing that, referring to Laiter's

(continued)

have made a difference in his favor if the court had allowed him more time to present evidence or argument at this hearing. Lyubchenko is wrong in insisting that the circuit court could not consider the accountant's testimony to shed light on the meaning of particular numbers reflected on an IRS "accounting transcript."

¶24 What remains on this issue appear to be only Lyubchenko's indirect suggestions that some aspects of the accountant's testimony may have been inadmissible. But he fails to develop any such specific argument based on pertinent legal authority.[4]

¶25 As with his separate argument addressed above, he again lobs unsupported ad hominem attacks on the circuit court. This serves him no better on this issue.

### III. "FAILING TO SANCTION"; "DUE PROCESS"

¶26 Lyubchenko presents a jumble of underdeveloped or undeveloped allegations and arguments purporting to describe deception by Laiter, unfairness and bias by the circuit court, and perjury and bias by Laiter's accountant. He argues that as a result he is entitled to "incurred losses" of $1,321 and, as a "sanction," $6,408.96 from Laiter. We put to the side yet more unsupported ad hominem attacks on the circuit court and also numerous attempts at emotive

---

accountant, "We have one accountant in the [court]room who consistently has testified throughout these hearings." These comments conveyed the view that, in the absence of definitive information or expertise to point to, Lyubchenko failed to present admissible evidence on these issues and failed to cross examine Laiter's accountant based on reliable premises or information.

[4] Further, the circuit court noted at the hearing that Lyubchenko did not object to the admissibility of the accountant's testimony until after she had already testified, which came too late.

assertions that do not constitute legal arguments (*e.g.*, "From the very beginning Laiter embarked on the path of lying and misrepresentation."). For the most part what remains consists of allegations and arguments involving the two issues we have already resolved against him. Further, as to those issues, as well as any others he touches on, we agree with Laiter that this section of Lyubchenko's brief amounts to a series of requests that this court improperly make its own credibility determinations, reweigh the evidence, and issue our "own findings of fact different from those appropriately made by the circuit court." We reject all of these arguments for these reasons.

## IV. ATTORNEY FEES FOR FRIVOLOUS MOTION

¶27 At the February 5, 2020 hearing, the circuit court granted Laiter's motion for attorney fees to compensate her for having to respond to what the court characterized as a frivolous motion by Lyubchenko to "supplement the record" for purposes of a separate appeal from this one filed by Lyubchenko in this case. Lyubchenko does not argue that the court was without authority to order a sanction if his motion was frivolous. *See Wenzel v. Wenzel*, 2017 WI App 75, ¶¶29-30, 378 Wis. 2d 670, 904 N.W.2d 384 (noting that a party in a family law action may seek sanctions by motion under WIS. STAT. § 802.05(2) and (3)). Nor does he argue that $500 was an unreasonable amount to impose as a sanction. *See Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 575-79, 597 N.W.2d 744 (1999) ("[I]n determining the appropriate amount of fees and expenses, a court should 'reflect upon equitable considerations in determining the amount of the sanction.'" (quoted source omitted)). Instead, Lyubchenko argues that his motion "cannot be frivolous," and therefore this order must be reversed. We disagree.

¶28     We defer to factual aspects of sanctions determinations, and as to those determinations, "[a] circuit court's discretionary decision will be sustained if it examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 548-49. However, the issue of whether arguments were warranted by existing law or a good faith argument for a change in the law presents a legal question to be reviewed de novo. *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶29, 264 Wis. 2d 318, 667 N.W.2d 14.

¶29     Additional background on this issue is necessary. At a hearing on May 29, 2019, the circuit court granted Laiter's motion to find Lyubchenko in contempt for failure to comply with the court's February 5, 2018 order requiring him to amend his 2015 income tax filing and file a joint 2015 tax return with Laiter. On September 18, 2019, Lyubchenko filed a notice of appeal from the contempt finding, in an appeal assigned appellate case No. 2019AP1793 ("appeal 2019AP1793").

¶30     On December 13, 2019, Lyubchenko, pro se, submitted to the circuit court a filing that he styled as a "Motion To Supplement Record On Appeal And Other Relief" ("the motion to supplement"). As pertinent to the issues here, Lyubchenko stated in the motion that his goal was to have the circuit court order that the record be supplemented, for purposes of appeal 2019AP1793, with several documents attached to the motion along with "any further documents received from the IRS or" Laiter. Lyubchenko specifically purported to attach "two IRS Notices both dated November 4, 2019," which Lyubchenko alleged he had received from Laiter on November 26, 2019. All such documents, he contended, would help him prevail in appeal 2019AP1793 by showing that, in connection with 2015 tax returns, Laiter "concealed and failed to disclose" facts regarding her

filing of a return and tax refunds she received. Lyubchenko argued that, because Laiter had "concealed" from him and the court that she had filed an amended return for tax year 2015, "all of these documents should be added to the record to be used on appeal."

¶31 On February 3, 2020, counsel for Laiter filed a six-page response to the motion to supplement, addressing in part the specific requests to supplement the record. Counsel explained that Laiter would be requesting attorney fees based on the need to respond to "this frivolous and meritless motion."

¶32 The circuit court noted at the February 5, 2020 hearing that this court had directed the circuit court to address Lyubchenko's motion to supplement the record in appeal 2019AP1793, so that the issue could be resolved for purposes of the appeal. The circuit court asked Lyubchenko whether he was seeking to supplement the record for appeal 2019AP1793 with documents that had not been submitted to the circuit court before it made the contempt finding at issue in appeal 2019AP1793, indeed whether some of these documents did not even exist at the time of the finding. Lyubchenko acknowledged that this was true. The court concluded that there was "simply no basis for me and no legal authority for me to grant your request to supplement the record with those documents," because the record in appeal 2019AP1793 "cannot be supplemented with facts that weren't in the record at the time" that the circuit court made the contempt ruling challenged by Lyubchenko in his appeal. The court directed that this court be informed that Lyubchenko's motion to supplement the record in appeal 2019AP1793 was denied.

¶33 The circuit court deemed it frivolous for Lyubchenko to "file a motion asking to supplement the record with documents" that were not in the

record before the circuit court at the time of the circuit court decision challenged in that appeal. The court suggested that its finding of frivolousness on this tax-related issue was also supported by the court's view that Lyubchenko had consistently taken uninformed positions in the case on tax-related issues, positions not based on valid authority—in other words, the frivolous motion was part of a pattern of Lyubchenko failing to pursue good faith arguments in this area and litigating recklessly. The court's comments as a whole can be reasonably interpreted as a determination, based on undisputed facts, that Lyubchenko filed the motion to supplement without any reasonable basis in law or equity and that it could not be supported by a good faith argument for an extension, modification, or reversal of existing law.

¶34 We conclude that, as to pertinent factual aspects of the court's determinations, the court "examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach," *see Jandrt*, 227 Wis. 2d at 548-49, and that, on our independent review, Lyubchenko's motion to supplement was not warranted by existing law or a good faith argument for a change in the law, *see Robinson*, 264 Wis. 2d 318, ¶29. The parties could not present arguments to this court in appeal 2019AP1793 regarding the contempt issue based on documents that were not before the circuit court at the time of the challenged court ruling, and therefore the motion to supplement merely wasted the time of opposing counsel and the circuit court. *See State ex rel. Wolf v. Town of Lisbon*, 75 Wis. 2d 152, 155-56, 248 N.W.2d 450 (1977) (appellate review is limited to the pertinent record before the circuit court).

¶35 It is true that it is not necessarily frivolous for a party to pursue a motion to properly enlarge the record on appeal to ensure that the record is

17

complete. *See id.* ("[T]he record is not to be enlarged by material which neither the trial court nor this court, acting within their respective jurisdictions, have ordered incorporated in it."). However, Lyubchenko was not seeking to add material for the sake of completeness. Instead, the theory of his motion to supplement was the following. If the documents were added to the record in appeal 2019AP1793, this would create a basis for him to make new arguments to this court about whether contempt was appropriate based on documents that were not before the circuit court when it made its contempt determination.

¶36 Lyubchenko points to no controlling legal authority for the proposition that he may make new arguments on appeal that were not raised in the circuit court, based on new material that was not presented to the circuit court. In addition, his arguments on this issue are also either difficult to understand, based on non-controlling authority from other jurisdictions, or off point. We reject as undeveloped any argument that we do not now address.

¶37 Lyubchenko poses a hypothetical. Suppose that, as soon as Lyubchenko filed the motion to supplement, the circuit court had on its own identified the motion as meritless. In that case, Lyubchenko suggests, there would have been no need for work by Laiter's counsel and no need for a hearing on this issue. That is not what happened, the court was not obligated to do this, and naturally the court was free to allow Laiter to respond to the motion.

¶38 Lyubchenko repeatedly refers to the IRS as a generally "reliable" or "trustworthy" source of information and makes references to the concept that the documents he sought to add to the record were subject to judicial notice that the circuit court could have taken, and perhaps this court now could take, under WIS. STAT. § 902.01(2). We are not clear how the judicial notice rule is supposed to

apply to bolster any argument that Lyubchenko now makes that the court should not have determined that the motion to supplement was frivolous. In any case, it is sufficient to reject whatever argument Lyubchenko intends to make along these lines that he fails to account for the points that courts cannot take judicial notice of a fact that is subject to "reasonable dispute," and that the parties here sharply disputed the meaning of the IRS documents. *See* § 902.01(2). After Laiter notes these points as directly undermining his argument, Lyubchenko fails to provide a satisfactory reply. He falls back on the apparent position that a court must take at face value any statement or numeral appearing on any IRS document, which is not true, and again fails to recognize that the circuit court could credit the testimony of Laiter's accountant.

¶39 More broadly, the circuit court did not deny the motion to supplement based on concepts of authentication or admissibility but instead on a complete lack of relevance to the subject matter of appeal 2019AP1793, which is whether the circuit court properly decided the contempt issue *based on the record that was then before it*. Lyubchenko states that he "never intended to use these documents for anything else but informational purposes," but fails to explain what he means by "informational purposes." The motion to supplement made no such point and the obvious purpose of the motion to allow him to use of these documents to advance arguments that the court improperly decided the contempt issue.

¶40 Lyubchenko argues that the circuit court improperly cut him off from being able to speak to the frivolousness issue and suggests that this alone may merit reversal. It is true that the court stated that it would address the frivolousness and related sanctions issues in an abrupt manner, and prevented Lyubchenko from explicitly addressing frivolousness as a topic as the court began

19

to address it. In this way, Lyubchenko is correct that the court did not allow him an opportunity to address the specific topic of frivolousness before ruling. However, we are not persuaded that we must reverse on this ground.

¶41 First, Lyubchenko was on ample notice from the February 3, 2020 letter from counsel for Laiter that counsel contended that the motion to supplement was frivolous and would be seeking reasonable attorney fees. He did not reply to the letter in writing and at the hearing he did not ask the circuit court for an opportunity to address the topic of frivolousness until the court had already begun giving its ruling. Second, toward the start of the hearing the court gave Lyubchenko a full opportunity to engage with the court on the merits of the motion to supplement, which is a substantial aspect of the frivolousness issue, before the court explained its decision on the merits. Third, Lyubchenko does not now explain, in this context, what evidence the court prevented him from presenting or referencing, or what argument he was prevented from making, that could have made a difference on these issues. We also note that Lyubchenko's motion to reconsider filed on February 20, 2020, did not suggest that the court had failed to give him a sufficient opportunity to address the frivolousness issue.[5]

---

[5] Laiter moves for costs and attorney fees against Lyubchenko under WIS. STAT. § 809.25(3)(c) because, she asserts, this appeal is frivolous. We may impose attorney fees under § 809.25(3)(c) only if the entire appeal is frivolous. *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶54, 264 Wis. 2d 318, 667 N.W.2d 14. Although we have decided against Lyubchenko on all of the issues he raises and we consider some of his arguments on appeal to be frivolous, we cannot say that his arguments are wholly frivolous. Accordingly, we deny the motion. Laiter cites *Zhang v. Yu*, 2001 WI App 267, 248 Wis. 2d 913, 637 N.W.2d 754, for the proposition that we could order costs and attorney fees based on a subset of frivolous arguments, but *Zhang* affirmed a circuit court determination of "overtrial," not an appellate court determination that an appeal was not wholly frivolous. *See id.*, ¶¶9-10, 16.

## CONCLUSION

¶42     For all these reasons, we affirm the challenged aspects of the court's February 10, 2020 order.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.